## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

RUBEN HERNANDEZ,

    Plaintiff,

    vs.

REYNALDO GUEVARA, ET AL.,

    Defendants.

1:23-cv-15375

Honorable Nancy L. Maldonado

Magistrate Hon. Heather K. McShain

## COUNTY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT, OR, ALTERNATIVELY, FOR A MORE DEFINITIVE STATEMENT

Now come Defendants Honorable Michael J. Hood and Brendan McGuire (incorrectly captioned and named "Brendan Maguire") (collectively "ASA Defendants"), by and through their attorneys, O'MARA & O'CALLAGHAN, LLC, along with Defendant Cook County (collectively "County Defendants"), by and through its attorney Cook County State's Attorney Kimberly M. Foxx, through her Assistant State's Attorney Kelli Huntsman, and respectfully move to dismiss Plaintiff Ruben Hernandez's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6); or, alternatively, respectfully move for Plaintiff to be ordered to provide a more definitive statement for his claims pursuant to Rules 12(e) of the Federal Rules of Civil Procedure. In support thereof, County Defendants state as follows:

i

TABLE OF CONTENTS

TABLE OF CONTENTS…………........................................................................................ ii

TABLE OF CASES…………........................................................................................... iv

RELEVANT FACTUAL BACKGROUND..................................................................... 1

SUMMARY OF THE CLAIMS...................................................................................... 2

PROCEDURAL BACKGROUND & CONSOLIDATED MATTERS ............................ 4

LEGAL STANDARD...................................................................................................... 4

ARGUMENT .................................................................................................................. 5

I.  THE ASA DEFENDANTS' CONDUCT OF REVIEWING AND MEMORIALIZING
    STATEMENTS ALREADY OBTAINED BY POLICE IS QUASI-JUDICIAL AND
    PROTECTED BY IMMUNITY. ................................................................................ 5

II. EVEN IF ABSOLUTE IMMUNITY DOES NOT APPLY, PLAINTIFF'S CLAIMS
    SHOULD BE DISMISSED FOR FAILURE TO STATE A VIABLE CLAIM. ............ 10

    A.  Plaintiff's Allegations Amount to Unsupported Conclusions and Ambiguous
        Group-Pleading. ............................................................................................ 10

    B.  Count II Should Be Dismissed Because Plaintiff Fails to Sufficiently Allege
        That ASA Defendants Participated in Obtaining His Alleged Coerced,  False
        Confession.................................................................................................... 14

    C.  Count III Should Be Dismissed Because Plaintiff Fails to Sufficiently Allege
        Claims of Malicious Prosecution and Unlawful Detention. ............................... 16

    D.  Count IV Should Be Dismissed Because Plaintiff Has Failed to State a Valid
        Claim for Failure to Intervene......................................................................... 18

III. SHOULD THIS COURT DETERMINE THAT ASA DEFENDANTS' CONDUCT
     IS NOT PROTECTED BY ABSOLUTE IMMUNITY, THEIR CONDUCT WAS
     REASONABLE AND IS THUS PROTECTED BY QUALIFIED IMMUNITY. .......... 19

IV. WITH NO VIABLE FEDERAL LAW CLAIMS, PLAINTIFF'S STATE LAW
    CLAIMS SHOULD BE DISMISSED FOR LACK OF JURISDICTION. ...................... 21

V.  PLAINTIFF'S INDEMNIFICATION CLAIM AGAINST DEFENDANT COOK
    COUNTY SHOULD BE DISMISSED TO THE EXTENT ASA DEFENDANTS
    ARE DISMISSED. ................................................................................................... 21

VII. IF THIS COURT DETERMINES NOT TO DISMISS PLAINTIFF'S CLAIMS,
     PLAINTIFF SHOULD BE REQUIRED TO PROVIDE A MORE DEFINITIVE
     STATEMENT OF HIS CLAIMS. .............................................................................. 22

    A.  Plaintiff Should Be Required to Provide a More Definitive Statement of His
        Claims Because His Ambiguous Group Pleading Does Not Sufficiently Put
        ASA Defendants on Notice of the Claims Brought Against Them. ...................... 22

B.   Plaintiff Should Be Required to Provide a More Definitive Statement of His Claims to Include Deliberate Omissions............................................................... 24

a.   Plaintiff Omitted from His Complaint Allegations That Involve Evidence That Implicated Him as a Suspect in the Cruz Murder Prior to His Arrest. ................ 26

b.   Plaintiff Omitted from His Complaint Allegations That His Statement to Police Was Court-Reported. ........................................................................................... 28

c.   Requiring Plaintiff to Provide a More Definitive Statement of His Claims to Include the Omissions Is Proper Because the Allegations Are Included in the Consolidated Matters and Plaintiff's PC Petition .................................................. 29

CONCLUSION.................................................................................................................... 30

CERTIFICATE OF SERVICE ............................................................................................ 1

**TABLE OF CASES**

*Anderson v. Simon*, 217 F.3d 472 (7th Cir. 2000)……………………………………….…………19

*Andrews v. Burge*, 660 F. Supp. 2d 868 (N.D. Ill. 2009)……………………...6, 10, 13, 15, 19, 20

*Arsberry v. Illinois*, 244 F.3d 558 (7th Cir. 2001)……………………………………………...21

*Ashcroft v. Iqbal*, 556 U.S. 662……………………………………………………………..4, 10

*Atkins v. Hasan*, 2015 U.S. Dist. LEXIS 80176…………………………………...11, 22, 24, 30

*Bank of Am. v. Knight*, 725 F.3d 815 (7th Cir. 2013)…………………………………..10, 14

*Bianchi v. McQueen*, 818 F. 3d 309 (7th Cir. 2016)……………………………………………...21

*Brown v. Budz*, 398 F.3d 904 (7th Cir. 2005)……………………………………………………23

*Buckley v. Fitzsimmons* ("*Buckley I*"), 509 U.S. 259 (1993)……………5, 6, 9, 19, 25, 26, 28, 29

*County of Sacramento v. Lewis,* 523 U.S. 833 (1998)……………………………………………...15

*Culp v. Flores*, 454 F.Supp.3d 764 (N.D. Ill. Apr. 15, 2020)……………………………………18

*Franklin v. Harvey City Det. Askew*, 2022 U.S. Dist. LEXIS 210428 (N.D. Ill. 2022)…………17

*Gentry v. Duckworth,* 65 F.3d 555 (1995)……………………………………………………10

*Hampton v. City of Chi.*, 349 F. Supp. 2d 1075 (N.D. Ill. 2004)………………………………6

*Harris v. City of Chi.*, 2015 LEXIS 34835 (N.D. Ill. 2015)………………………………………6

*Harris v. City of Chi.*, 330 F.R.D. 508 (N.D. Ill. 2018)………………………9, 20, 25, 26, 28, 29

*Henderson v. Rangel*, 2022 U.S. Dist. LEXIS 154944 (N.D. Ill. Aug. 26, 2022)………………17

*Hunt v. Jaglowski*, 926 F2d 689 (7th Cir. 1991)……………………………………………...5, 8

*Hurt v. Wise*, 880 F.3d 831 (7th Cir. 2018)……………………………………………………15

*Hyung Seok Koh v. Graf*, 307 F. Supp. 3d 827 (N.D. Ill. 2018)………………………14, 15, 16, 20

*Imbler v. Pachtman*, 424 U.S. 409 (1976)……………………………………………...5, 6, 8

*Kirk v. Michael Reese Hosp. and Med. Ctr.*, 117 Ill. 2d 507 (1987)…………………………22

*Kuhn v. Goodlow,* 678 F.3d 552 (7th Cir. 2012)……………………………………………10

*Lanigan v. Village of E. Hazel Crest*, 110 F.3d 467 (N.D. Ill. 1997)……………………………19

*Lewis v. Chicago*, 914 F.3d 472 (7th Cir. 2019)……………………………………………18

*Mack v. City of Chicago*, 2020 U.S. Dist. LEXIS 222457 (N.D. Ill. Nov. 30, 2020)……………18

*Malloy v. Hogan*, 378 U.S. 1 (1964)……………………………………………………...16

*McCauley v. City of Chi.*, 671 F.3d 611 (7th Cir. 2011) ……………………………1, 4, 14

*McDonough v. Smith*, 139 S.Ct. 2149 (2019)……………………………………………18

*Mitchell v. Forsyth*, 472 U.S. 511 (1985)……………………………………………………5

*Moore v. City of Chicago*, 2020 U.S. Dist. LEXIS 101340 (N.D. Ill. Jun. 10, 2020)...............18

*Navarro v. City of Aurora*, 2022 U.S. Dist. LEXIS 100424 (N.D. Ill. Jun 6, 2022).................17

*Patrick v. City of Chicago*, 213 F. Supp. 3d 1033 (N.D. Ill. 2016)..............................19, 20

*Pearson v. Callahan,* 555 U.S. 223 (2009).................................................19, 20

*Perkins v. Wexford Health Sources, Inc.*, 2019 U.S. Dist. LEXIS 29227 (N.D. Ill.2019)..........23

*Rasho v. Elyea*, 856 F.3d 469 (7th Cir. 2017).................................................10

*Reichle v. Howards,* 556 U.S. 664 (2012)....................................................20

*Rodney Harris v. City of Chicago*, 2015 WL 5445012 (N.D. Ill. Sep. 15, 2015)...................20

*Roehl v. Merrilees,* 2012 U.S. Dist. LEXIS 50253 (N.D. Ill. 2012)................................19

*Saucier v. Katz*, 533 U.S. 194 (2001).........................................................20

*Saunders v. City of Chicago*, 2013 WL 6009933 (N.D. Ill. 2013)..............................20, 21

*Serrano v. Guevara,* 315 F. Supp. 3d 1026 (N.D. Ill. 2018)....................................19, 20

*Sheen v. Bil-Jax, Inc.*, 1993 U.S. Dist. LEXIS 17593 (N.D. Ill. Dec. 6, 1993)......................5

*Smith v. Power*, 346 F.3d 740 (7th Cir. 2003).................................................8

*Sneed v. Vill. Of Lynwood*, 2022 U.S. Dist. LEXIS 181434 (N.D. Ill. Oct. 4, 2022)...............17

*Spiegel v. Rabinovitz*, 121 F.3d 251 (7th Cir. 1997)............................................5

*Thompson v. Clark*, 142 S. Ct. 1332 (2022)...............................................16, 17

*Treadwell v. Chi. Police Officers David*, 2021 U.S. Dist. LEXIS 137647 (N.D. Ill. 2021) .........18

*United States v. Brooks,* 125 F.3d 484 (7th Cir. 1997).........................................16

*United States v. Huerta,* 239 F.3d 865 (7th Cir. 2001).........................................16

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429 (7th Cir. 1993)....................25

*White v. City of Chicago*, 369 Ill. App. 3d 765 (1st Dist. 2006)...................................6, 21

*Whitlock v. Brueggemann,* 682 F.3d 567 (7th Cir. 2012)..........................9, 25, 26, 28, 29

*Wilson v. Layne,* 536 U.S. 603 (1999).........................................................20

## RELEVANT FACTUAL BACKGROUND

For the purposes of this Motion to Dismiss, only the well-pleaded facts in Plaintiff's Complaint (hereinafter "Complaint") are accepted as true. *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011). On January 29, 1999, near Bristol's nightclub (the "nightclub"), Roberto Cruz ("Decedent Cruz") was found dead and with multiple gunshot wounds next to his vehicle after having spent time in the nightclub earlier. *Plaintiff's Complaint* (hereinafter "Compl.") ECF No. 1, at ¶¶24-26. A bouncer gave detectives the descriptions of two people who had argued with Decedent Cruz earlier that evening. *Id.* at ¶27.

After five weeks of investigation, officers arrested and questioned Plaintiff Hernandez, Richard Kwil ("Kwil"), David Gecht ("Gecht"), and Gecht's girlfriend Colleen Miller ("Miller"). *Id.* at ¶¶29, 61. Gecht and Kwil gave confessions relating to the murder of Decedent Cruz, stating that they were the shooter and the lookout, respectively. *Id.* at ¶47. Miller also stated that Gecht had confessed to her about the murder. *Id.* at ¶61. Plaintiff was arrested and taken to the Fourteenth District, where he was questioned about a different crime, distinct from the Cruz murder. *Id.* at ¶30. Plaintiff alleges that his attorney arrived at the Fourteenth District and advised him not to make a statement related to the unrelated charge, at which time Plaintiff told police he would not make statements relating to that crime. *Id.* Thereafter, Plaintiff was then taken to Area Five police station, where Plaintiff was questioned about the murder of Decedent Cruz. *Id.* at ¶31.

Plaintiff initially denied having any knowledge about or involvement in the murder of Decedent Cruz. *Id.* at ¶¶32, 39. However, Plaintiff claims that he was subjected to various forms of abuse and coercion by Police Officer Defendants for several hours. *Id.* at ¶¶32-39. After the abuse and coercion employed by Police Officer Defendants, Plaintiff was taken to see ASA Defendant McGuire, who took from Plaintiff a statement in which he implicated himself, Gecht,

and Kwil in the murder of Decedent Cruz. *Id.* at ¶¶40-41, 43. However, Plaintiff ultimately refused to sign the statement. *Id.* at ¶¶41-42.

Plaintiff alleges that his statement was fabricated, a fact that was suppressed by Police Officer Defendants and ASA Defendants. *Id.* at ¶¶41-42, 46. Plaintiff claims that the statements of Plaintiff, Kwil, Gecht, and Miller merely repeated what the Police Officer Defendants told them to say and were all obtained as a result of coercion, promises, and "pressure and threats." *Id.* at ¶¶ 29, 33-38, 41, 43, 48-54, 57-59, 63-65, 68, 70. Notably, Plaintiff alleges that Police Officer Defendants "suppressed at all times the [abusive and coercive] techniques they had used to obtain [the statements from Plaintiff, Kwil, Gecht, and Miller]" and suppressed at all times "that they fabricated the statements." *Id.* at ¶¶46, 60, 71.

During Plaintiff's trial in March 2000, the statement that Plaintiff claims was attributed to him in spite of not making or signing the statement was published to the jury. *Id.* at ¶¶44-45, 72-73 76. Plaintiff was ultimately convicted and was sentenced to "decades in prison." *Id.* at ¶78. In July 2023, after filing a petition for post-conviction relief (hereinafter "PC Petition"), Plaintiff's conviction was vacated and all charges against him were dropped. *Id.* at ¶¶10, 86-88.

## SUMMARY OF THE CLAIMS

Plaintiff has asserted three federal law claims against both Police Officer Defendants and ASA Defendants. Plaintiff alleges the following three federal claims pursuant to 42 U.S.C. §1983: (i) a coerced and false confession claim in violation of Plaintiff's Fifth and Fourteenth Amendment rights (Count II); (ii) a malicious prosecution and unlawful detention claim in violation of Plaintiff's Fourth and Fourteenth Amendment rights (Count III); and a failure to intervene claim (Count IV). *Id.* at ¶¶140-60. Against both Police Officer Defendants and ASA Defendants, Plaintiff alleges the following three state law claims: (i) malicious prosecution (Count VII); intentional infliction of emotional distress (Count VIII); and willful and wanton conduct (Count

2

IX). *Id.* at ¶¶181-193. In sum, Plaintiff alleges that ASA Defendants, "while acting in his [sic] investigatory capacity" and prior to the existence of probable cause, "manufactured and fabricated coerced confessions and statements from Plaintiff and other witnesses" in order to maliciously prosecute Plaintiff. *Id.* at ¶20. Finally, against the City of Chicago and Cook County, Plaintiff alleges a state law claim of indemnification (Count XII). *Id.* at ¶¶219-24. Notably, Defendant Cook County is named as a defendant solely for indemnification purposes. The remaining claims are not alleged against County Defendants.[1]

While the remaining claims in Plaintiff's Complaint appear not to be against ASA Defendants, it is difficult to ascertain to whom many of the allegations are directed. Plaintiff makes the distinction between "Police Officer Defendants" and "Prosecutor Defendants,"[2] yet he frequently uses the ambiguous collective term "Defendants" throughout the Complaint.[3] Plaintiff even makes claims relating to "Defendants'" misconduct without specifying to whom of the several Defendants he's referring.[4] In many other instances, it is clear that Plaintiff uses the ambiguous collective term "Defendants" in allegations that do not apply to the ASA Defendants.[5] Defendant ASAs should not be obligated to parse through Plaintiff's ambiguous Complaint to

---

[1] Against only the Police Officer Defendants, Plaintiff alleges the following three claims: (i) a federal due process claim in violation of his Fourteenth Amendment rights (Count I); (ii) a federal conspiracy claim (Count V); and (iii) a state law claim of civil conspiracy (Count X). Compl. ¶¶128-39, 161-67, 194-99. Against only the City of Chicago, Plaintiff alleges the following two claims: (i) a federal "policy and practice" claim (Count VI); and a state law claim of *respondeat superior* (Count XI). *Id.* at ¶¶168-80, 200-02.

[2] *Id.* at ¶¶18, 21.

[3] *See, generally, id.*; *see, also, id.* at ¶¶2, 3, 5, 11-12, 19, 21, 44, 47, 54, 58-59, 61, 69-70, 72, 76-77, 80, 84, 92-94, 106-107, 117, 133, 143-145, 147, 151, 153, 157, 159, 166, 183, 186, 189, 192-193, 197, 199.

[4] *See, e.g., id.* at ¶¶5, 19, 72, 127, 197, 199.

[5] For example, in Paragraph 21, Plaintiff alleges that City of Chicago was the employer of Police Officer Defendants and is thus responsible for all torts committed by Police Officer Defendants, but then interchangeably says that each of the general individual Defendants (rather than "Police Officer Defendants") acted as agents or employees of the City of Chicago. *Id.* at ¶21. Plaintiff even alleges that Cook County "was at all relevant times the employer of Prosecutor Defendants" yet later makes claims relating to "members of the Chicago Police Department, including the *Defendants* in this action" and "employees of the City of Chicago, including the named *Defendants*." *Id.* at ¶¶22, 92-94 (emphasis added); *see, also e.g., id.* at ¶¶19, 106, 127, 171, 180.

figure out which claims they are defending themselves against. Plaintiff is capable and obligated to plead more clearly.

## PROCEDURAL BACKGROUND & CONSOLIDATED MATTERS

On December 18, 2023, the above-captioned matter was consolidated for discovery purposes and dispositive motion practice with the following two matters: (i) *David Gecht v. Guevara, et al.*, docket 1:23-cv-1742 (the "*Gecht* matter" or "*Gecht*"); and (ii) and *Richard Kwil v. Guevara, et al.*, docket 1:23-cv-1742 (the "*Kwil* matter" or "*Kwil*") (collectively "the *Gecht/Kwil* matters"). *Gecht*, ECF No. 112; *Kwil*, ECF No. 81. In the *Gecht/Kwil* matters, pending before this Court are fully-briefed Motions to Dismiss the operative complaints. *Gecht*, ECF No. 95, 106, 115, 117; *Kwil*, ECF No. 50, 57, 74, 77. While arguments relating to the Motions to Dismiss are distinct for each party and claim, Hernandez alleges against ASA Defendants the same counts as Gecht and Kwil. *See Compl.*, ¶¶128-208; *see, also*, *Gecht's Second Amended Complaint*, *Gecht*, ECF No. 95 (hereinafter "Gecht's Compl."), at ¶¶145-224; *Kwil's First Amended Complaint*, *Kwil*, ECF No. 95 (hereinafter "Kwil's Compl."), at ¶¶134-213. Accordingly, many of the below arguments are similar to those in pending Motions to Dismiss in the *Gecht/Kwil* matters, except those pursuant to Federal Rule of Civil Procedure 11 are distinct to Plaintiff's Complaint.

## LEGAL STANDARD

To meet Rule 12(b)(6) pleading requirements, a plaintiff's complaint must "state a claim to relief that is plausible on its face." *McCauley*, 671 F.3d at 615 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). The Complaint must "'provid[e] some specific facts' to support the asserted legal claims" and "contain 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief." *McCauley*, 671 F.3d at 616. In reviewing the sufficiency of a plaintiff's claims, the Court must "accept the well-pleaded facts in the Complaint as true, but legal

conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *Id.*

Under Rule 12(e), a party may move for a more definite statement of a pleading where such pleading is so vague or ambiguous that the party cannot reasonably prepare a response. Fed. R. Civ. P. 12(e). The motion must point out the defects complained of and the details desired. *Id.* The purpose of a motion for a more definite statement under Rule 12(e) is to clear up confusion, but not to replace discovery. *Sheen v. Bil-Jax, Inc.*, 1993 U.S. Dist. LEXIS 17593, at *3 (N.D. Ill. Dec. 6, 1993).

## ARGUMENT

## I.   THE ASA DEFENDANTS' CONDUCT OF REVIEWING AND MEMORIALIZING STATEMENTS ALREADY OBTAINED BY POLICE IS QUASI-JUDICIAL AND PROTECTED BY IMMUNITY.

Prosecutors are absolutely immune from federal § 1983 suits for damages for actions they take that are "intimately associated with the judicial phase of the criminal process . . . ." *Buckley v. Fitzsimmons* ("*Buckley I*"), 509 U.S. 259, 273 (1993); *Imbler v. Pachtman*, 424 U.S. 409, 431 n.33 (1976); *Hunt v. Jaglowski*, 926 F2d 689, 692-93 (7th Cir. 1991). Where applicable, absolute immunity provides "*immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original).

The test to determine whether a prosecutor's conduct is protected by absolute immunity is a "functional approach," which requires the court to look to the "nature of the function performed" as opposed to *who* is performing the function. *Buckley I,* 509 U.S. at 269. This includes "quasi-judicial" acts taken even *before* the initiation of criminal charges (e.g., reviewing evidence to make a charging recommendation). *Id.* at 273; *see, also, Spiegel v. Rabinovitz*, 121 F.3d 251, 257 (7th Cir. 1997). Absolute immunity also protects "[p]reparation, both for the initiation of the criminal process and for a trial, [and] may require the obtaining, reviewing, and evaluating of evidence."

5

*Imbler*, 424 U.S. at 431, n.33. Taking a suspect's statement following an officer's interview is considered part of a prosecutor's advocacy role of evaluating and preparing evidence, and "a prosecutor should not be deprived of immunity because, in a case of murder, he decides to hear what the defendant has to say for himself." *Andrews v. Burge*, 660 F. Supp. 2d 868, 878 (N.D. Ill. 2009); *see, also, Hampton v. City of Chi.*, 349 F. Supp. 2d 1075, 1081 (N.D. Ill. 2004). Prosecutors are entitled to absolute immunity under Illinois law as well, with Illinois courts and courts in this District having applied the pronouncement of absolute immunity in *Imbler*. *See, e.g., White v. City of Chicago*, 369 Ill. App. 3d 765 (1st Dist. 2006); *Harris v. City of Chicago*, 2015 LEXIS 34835, at *19 (N.D. Ill. 2015).

When considering whether a prosecutor is immune from suit, a court should focus on the *conduct* for which immunity is claimed rather than "the *harm* that the conduct may have caused or the question whether it was lawful." *Buckley I*, 509 U.S. at 271 (emphasis added). Here, on the final day of a five-week investigation, ASA Defendants were called to review and evaluate witnesses and witness statements—which as pleaded—were already obtained by the Police before they were memorialized in written form by the ASA Defendants. Interviewing witnesses in this context is not investigatory, such conduct is part of initiating a judicial proceeding. *Hampton*, 349 F. Supp. 2d at 1081. Therefore, the actual *conduct* complained of—interviewing witnesses after a five-week investigation immediately before determining whether to file charges—is prosecutorial and protected by absolute immunity. *See Buckley I*, 509 U.S. at 271.

Plaintiff makes the conclusory allegations that prior to the existence of probable case, ASA Defendants acted as investigators and "in his [sic] investigatory capacity" by manufacturing and fabricating coerced confessions and statements from Plaintiff and other witnesses. Compl. ¶¶20,

42, 56, 67, 141-43, 150, 182. However, this allegation is belied by Plaintiff's own allegations as to the timing of acts of the ASA Defendants.

In fact, Plaintiff alleges that all three statements taken by the ASA Defendants were *after* the Police had obtained their statements using abusive tactics prior to the ASA's arrival and outside their presence. By Plaintiff's allegations, Police Officer Defendants subjected Plaintiff to "repeated interrogations" that "continued for hours" before ASA Defendant McGuire became involved. *See* Compl. ¶¶31-40 ("Police Officer Defendants yelled at Plaintiff, and threatened him …. Police Officer Defendants fed Plaintiff the facts of the crime and their theories of how it occurred …. Police Officer Defendants also physically abused Plaintiff, including by hitting him and choking him.… Eventually, the Police Officer Defendants took Plaintiff to meet with [ASA Defendant McGuire]" to give a statement.") (emphasis added).

Plaintiff makes similar allegations as to the timing of Gecht's statement. *See id.* at ¶¶49-51 ("[W]hen Gecht was questioned…[h]is denials were ignored, instead the Police Officer Defendants subjected him to repeated interrogations…physically abused him…and promised him that if he signed a statement [then] he could go home. …Gecht's will was eventually overcome and then gave a statement … Gecht repeated the facts that had been fed to him.") (emphasis added). That statement was taken by ASA Defendant McGuire after it was pleaded to have first been obtained by Police Officer Defendants.

Regarding Kwil's statement, Plaintiff again has pleaded his statement was obtained by the Police Officer Defendants before an ASA Defendant memorialized it. *See id.* at ¶¶52-54 ("[W]hen Kwil was questioned…[h]is denials were ignored, and instead the Police Officer Defendants subjected him to repeated interrogations…threatened him…and promised him that if he signed a statement against Gecht he could go home. …He [then] agreed to give a statement. …He repeated

the facts that had been fed to him.") (emphasis added). This statement was taken by ASA Defendant Hood after it was pleaded to have first been obtained by Police Officer Defendants. From the three summaries of the Complaint regarding the timing of the ASA Defendants' actions related to these statements, Plaintiff's contention that there was no probable cause at the time the ASAs acted is contradicted by his own pleading.

Even if Plaintiff had alleged that ASA Defendants knew about the abusive tactics at the time they took the statements, prosecutors are shielded by absolute immunity even where they act "maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence." *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003); *see, also*, *Imbler*, 424 U.S. at 995-96 n.34 (holding that absolute prosecutorial immunity even extends to a prosecutor who willfully uses perjured testimony and suppresses exculpatory information). This is because the test for absolute immunity assesses the function of the prosecutor, not the wrong. A felony review ASA taking a statement from a suspect following an illegal coercive interrogation remains a prosecutorial function even in a situation where the prosecutor knows about the misconduct. *See Hunt*, 926 F. 2d at 692-93. Here, at best Plaintiff alleges ASA Defendants memorialized statements which they knew were obtained as a result of officers' misconduct. But this Court is not supposed to analyze the wrong, but rather the context or the function of the prosecutor, which in this case was reviewing and evaluating witnesses and witness statements obtained by officers after a five-week investigation.

In addition, ASA Defendants' absolute immunity is strengthened where the Complaint, on its face, establishes probable cause existed before the involvement of ASA Defendants. While the presence or absence of probable cause is not dispositive in the absolute immunity inquiry, many courts evaluate whether (and when) probable cause existed in their determination of whether a

prosecutor's conduct is quasi-judicial or investigatory. *Buckley*, 509 U.S. at 274, n.5. Generally, the existence of probable cause prior to a prosecutor's involvement weighs in favor of absolute immunity, but the existence of probable cause has not been held as a necessary condition for absolute immunity to apply. *Harris v. City of Chi.*, 330 F.R.D. 508, 515 (N.D. Ill. 2018) (one reason for finding the felony review prosecutor immune from suit was that his involvement with the plaintiff was only after probable cause had been established). However, once there is probable cause to arrest, then the prosecutor's role is no longer investigatory. *Whitlock v. Brueggemann,* 682 F.3d 567, 580 (7th Cir. 2012).

Here, taking the facts alleged by Plaintiff, ASA Defendants went to Area Five to review and evaluate witnesses and witness statements after a five-week investigation. The Complaint, on its face, contains the probable cause that existed prior to the involvement of the ASA Defendants. The Complaint states that Gecht and Kwil both gave statements implicating themselves and Plaintiff in the shooting, and that Gecht's girlfriend, Miller, stated to officers that Plaintiff had confessed to her. Moreover, the Complaint alleges that the ASA Defendants conducted their interviews <u>after</u> officers had conducted theirs. "It is reasonable, indeed desirable" for a prosecutor to "question [a] plaintiff himself to verify the confession obtained by the police before making his own decision whether or not to file charges." *Harris,* 2015 U.S. Dist LEXIS 122500, at *3. ASA Defendants' decision to speak to witnesses before filing charges was reasonable, quasi-judicial in nature, and thus protected by absolute immunity.

For the aforementioned reasons, ASA Defendants' conduct was quasi-judicial and thus protected by absolute immunity. Accordingly, ASA Defendants respectfully request this Court to dismiss Plaintiff's federal and state-law claims against them.

## II.     EVEN IF ABSOLUTE IMMUNITY DOES NOT APPLY, PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A VIABLE CLAIM.

The Supreme Court in *Iqbal* set forth a two-pronged analysis when reviewing 12(b)(6) dismissals. *Ashcroft,* 556 U.S. at 663-64. First, pleadings consisting of conclusory allegations are not accepted as true when reviewing the Complaint's sufficiency. *Id*. This includes conclusory statements "couched" as factual allegations, and recitations of the elements. *Id*. at 678. Second, after excising the conclusory allegations from the Complaint, any well-pled factual allegations are accepted as true and then the Court must determine whether the remaining well-pled facts "plausibly give rise to an entitlement of relief." *Id*. at 679.

### A.     Plaintiff's Allegations Amount to Unsupported Conclusions and Ambiguous Group-Pleading.

Plaintiff has failed to sufficiently plead, beyond conclusory allegations and ambiguous group-pleading, how ASA Defendants had personal involvement in Plaintiff's constitutional deprivation. Liability under §1983 is premised on the wrongdoer's personal responsibility: having caused or participated in an alleged constitutional deprivation. *Kuhn v. Goodlow,* 678 F.3d 552, 555-556 (7th Cir. 2012); *Bank of Am. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). Allegations that "defendants" committed some act(s), "without any details about who did what . . . is inadequate" and "does not propound a plausible contention that a particular person did anything wrong." *Knight*, 725 F.3d at 818. "A defendant will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017) (internal quotation marks omitted); *Gentry v. Duckworth,* 65 F.3d 555, 761 (1995)) (personal involvement requires the individual to "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye"). Indeed, "mere presence" at a police station "while coercion was going on outside the

prosecutor's presence is not enough to make a plausible complaint that the prosecutor crossed the line into illegality." *Andrews,* 660 F. Supp. 2d at 878.

Complaints based on a theory of collective responsibility should be dismissed because that "kind of [group] pleading is indeed inadequate, because it provides no clues as to whether, for the particular conduct described, plaintiffs assert that each and every one of the defendants engaged in that conduct . . . or whether plaintiffs instead contend that only some of the defendants, or possibly even *none* of them, performed a given act." *Atkins v. Hasan*, 2015 U.S. Dist. LEXIS 80176, at *8-9.

In this Complaint, there are 208 enumerated paragraphs which contain allegations against eleven distinct defendants. To disguise his lack of any factual basis to include the ASA Defendants in this suit, Plaintiff deceptively relies on the use of the ambiguous, collective term "*Defendants*" in the overwhelming number of his allegations. *See* Compl. at ¶¶2, 3, 5, 11-12, 19, 21, 44, 47, 54, 58-59, 61, 69-70, 72, 76-77, 80, 84, 92-94, 106-107, 117, 133, 143-145, 147, 151, 153, 157, 159, 166, 183, 186, 189, 192-193, 197, 199. Plaintiff's use of these group-pleadings fails to give ASA Defendants adequate notice as to how each was purportedly *personally* involved in the conduct described. As a result, all Counts which rely on group pleading allegations—which is all of the Counts—should be dismissed for failure to satisfy federal pleading requirements. *See* Fed. R. Civ. P. 8.

Plaintiff's conclusory allegations that ASA Defendants "participated personally in fabricating" each witness statements and that they each "participated as an investigator" in the investigation have no supporting factual allegations. *See* Compl. at ¶¶42, 55-56, 66. This type of bare, conclusory allegations against the ASA Defendants are exactly the type which *Twombly/Iqbol* has ruled is insufficient. For further evidence of the paucity and conclusory nature

of the allegations against the ASA Defendants, one must only look to the remainder of the Complaint.

The Complaint contains facts describing the acts of the Defendant Officers, but nowhere does it specify what the ASA Defendants did to support Plaintiff's bare allegation that they "participated personally in fabricating" witness statements. *See* Compl. ¶49 ("…Police Officer Defendants subjected [Gecht] to repeated interrogations [and] physically abused him…"); ¶52 ("Police Officer Defendants subjected [Kwil] to repeated interrogations [and] threatened him …") ¶63 ("…[Miller] only agreed to sign a statement falsely claiming that [Gecht] confessed because of police treats."). Plaintiff alleges that ASA Defendants were merely present at the police station – not in the interrogation rooms or even watching the interrogations – while Police Officer Defendants implemented coercive tactics on the witnesses, and Plaintiff claims that ASA Defendants should have known the statements were false without any allegations to support how ASA Defendants would have known the statements were false or a product of coercion. *See id.* at ¶¶ 42, 44, 56, 58, 67, 69. This Complaint fails to meet the pleading standards of *Twombly/Iqbal* as to the ASA Defendants.

While the Complaint contains specific allegations against the Police Officer Defendants, it provides *none* against Defendant Hood. Against him, Plaintiff alleges that Defendant Hood took Kwil's statement after Police Officer Defendants' interrogations and that he "was present at the Area Five Detective Division while [Plaintiff's] interrogation was ongoing." *See* Compl. ¶¶42, 55, 57. Plaintiff attempts to attribute to ASA Defendant Hood the conduct of Police Officer Defendants by claiming – without any supporting factual allegations – that Defendant Hood "actively participated as an investigator with Police Officer Defendants." *See id.* at ¶56. However, Plaintiff does not allege that ASA Defendant Hood was present in any of the interrogations conducted by

police. *See id.* at ¶¶29-40, 48-59, 61-71. Further, there are no allegations that Defendant Hood had any reason to know Kwil's statement was false or the product of coercive techniques. On the contrary, Plaintiff alleges that Police Office Defendants at all times suppressed the coercive techniques they used and that they had fabricated the witness statements. *See id.* at ¶¶ 46, 60, 71. There are no allegations that ASA Defendant Hood had any conversation with any investigators or reviewed other witness statements to know the purported facts of the case or to suspect that any coercive tactics had been implemented by investigators. At most, Plaintiff pleads that ASA Defendant Hood "was present at the Area Five Detective Division while Kwil's interrogation was ongoing" and took Kwil's statement after the police officers' interrogation. *See id.* at ¶¶42, 55, 57. Indeed, "mere presence" at a police station while coercion occurs outside a prosecutor's presence is insufficient, and Plaintiff's claims against Defendant Hood should be dismissed. *See Andrews*, 660 F. Supp. 2d at 878.

As to Defendant McGuire, through conclusory and ambiguous group pleading, Plaintiff similarly attempts to attribute the conduct of Police Officer Defendants to Defendant McGuire. Plaintiff makes the conclusory allegation that Defendant McGuire "actively participated as an investigator with Police Officer Defendants" and that the witnesses were "forced to sign" their statements. *See id.* at ¶¶42, 56, 59, 67. However, Plaintiff does not allege that Defendant McGuire was present for any of the interrogations, how he acted as an investigator, knew of the coercive tactics implemented by Police Officer Defendants, or that Defendant McGuire was the individual to force any of the witnesses to sign their statements. There are no factual allegations to support that ASA McGuire or ASA Hood were acting in an investigatory capacity. Such bare assertions are not enough to satisfy the *Twombly/Iqbol* pleading standard.

13

Setting aside that conclusory allegations are insufficient to state a viable claim (*see McCauley*, 671 F.3d at 617), these allegations personally naming McGuire and Hood only apply to Plaintiff's claim of a coerced and false confession in Count II. In other words, disregarding the allegations which are improperly group-pleaded, the Plaintiff has not alleged sufficient facts to support the remaining two federal Counts and three state law Counts against the ASA Defendants. *See, respectively*, Compl., Counts. III, IV, VII, VIII, and IX. However, as stated, these allegations that personally name McGuire and Hood merely recite the conclusions necessary for a claim of a coerced and false confession without any allegations providing factual support, which is also insufficient. Plaintiff's ambiguous group-pleading and conclusory allegations do not meet federal pleading standards because Plaintiff's allegations do not sufficiently put ASA Defendants on notice of the wrongdoing alleged against them. *See Knight*, 725 F.3d at 818. Without sufficiently alleging ASA Defendants' personal involvement, Plaintiff's §1983 claims should be dismissed. *See Kuhn*, 678 F.3d at 555-56.

**B.      Count II Should Be Dismissed Because Plaintiff Fails to Sufficiently Allege That ASA Defendants Participated in Obtaining His Alleged Coerced, False Confession.**

Plaintiff alleges that ASA Defendants violated his Fifth and Fourteenth Amendment rights by "acting as investigators and without probable cause" and "forc[ing] Plaintiff to make false [incriminating] statements involuntarily and against his will" that were used against him in his criminal proceedings. Compl. ¶¶140-48 (Count II). Fifth and Fourteenth Amendment violations are evaluated under different standards. Fourteenth Amendment violations result from "conscience-shocking" conduct, whereas Fifth Amendment violations require a fact-based evaluation of whether a statement was involuntary, based on the totality of the circumstances of the interrogation. *Hyung Seok Koh v. Graf,* No. 11 C 02605, 307 F. Supp. 3d 827, 850 (N.D. Ill.

2018). Under either standard, looking at Plaintiff's Complaint and disregarding conclusory allegations, Plaintiff's claims are insufficient as to the ASA Defendants and should be dismissed.

First, in order to succeed on a claim under the Fourteenth Amendment, a plaintiff must show that his substantive due process rights were violated by an executive action or abuse of power, that "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *County of Sacramento v. Lewis,* 523 U.S. 833, 847 (1998). While there is no clear-cut analysis for what is or is not conscience-shocking, "the bar for conscience-shocking conduct is extraordinarily high." *Koh*, 307 F. Supp. 3d at 850, (*citing Hurt v. Wise*, 880 F.3d 831, 844 (7th Cir. 2018)) (internal quotation marks omitted).

Here, Plaintiff does not name ASA Defendants as the individuals who used coercion, pressure, or threats to obtain statements from Plaintiff, Kwil, Gecht, or Miller. *See* Compl. at ¶¶29-40, 48-59, 61-71. Specifically, Plaintiff alleges that ASA Hood was present at Area Five at the time of Plaintiff's interrogation, that ASA McGuire was present at Area Five at the time of Miller's interrogation, and that both ASA Defendants were present at Area Five while Kwil's and Gecht's interrogations were ongoing. *See id.* at ¶¶42, 56, 67. However, mere presence at a police station is insufficient. *See Andrews*, 660 F. Supp. 2d at 878. There are no allegations to support that ASA Defendants were present for or aware of any of the coercive techniques implemented by police. Further, Plaintiff makes the conclusory allegation that ASA Defendants knew that the statements of Plaintiff, Gecht, Kwil, and Miller were "obviously false" and that they disregarded those indicators when taking the statements. *See* Compl. ¶¶44, 58, 69. However, this is belied by Plaintiff's own allegations that the officers suppressed at all times that the statements were fabricated, in addition to suppressing all of the coercive techniques they used. *See id.* at ¶¶46, 60, 71. Plaintiff's allegations employ ambiguous group-pleading to mischaracterize ASA Defendants

15

as being personally involved in the behavior of the interrogating officers. Even if this Court were to determine that the conduct of Officer Defendants is conscience-shocking, there are no allegations in Plaintiff's Complaint to attribute that conduct to ASA Defendants, making his Fourteenth Amendment claims insufficient.

Second, Plaintiff alleges that ASA Defendants violated his Fifth Amendment right against self-incrimination by subjecting Plaintiff to a coercive interrogation. Compl. ¶¶140-48. The test to determine the voluntariness of a confession is based on the totality of the circumstances. *Malloy v. Hogan*, 378 U.S. 1, 7 (1964). Some circumstances to consider are: characteristics of the suspect, conditions of the interview, and the conduct of the interrogators. *United States v. Brooks,* 125 F.3d 484, 492 (7th Cir. 1997); *Koh,* 307 F. Supp. 3d, at 850-51. The court must analyze coercion from the perspective of a reasonable person in the position of the suspect being interrogated. *United States v. Huerta,* 239 F.3d 865, 871 (7th Cir. 2001). Here, beyond Plaintiff's ambiguous group-pleading, Plaintiff's Complaint alleges that after Plaintiff was interrogated by police officers, and ASA Defendants arrived to speak to Plaintiff before deciding whether to press charges against him, which was reasonable. Accordingly, Plaintiff has failed to sufficiently allege that ASA Defendants violated his Fifth Amendment right against self-incrimination.

### C. Count III Should Be Dismissed Because Plaintiff Fails to Sufficiently Allege Claims of Malicious Prosecution and Unlawful Detention.

Regarding Plaintiff's malicious prosecution claims in Count III, in 2022 the Supreme Court recognized the existence of a Fourth Amendment malicious prosecution claim, overruling contrary Seventh Circuit precedent. *Thompson v. Clark*, 142 S. Ct. 1332, 1337 (2022). However, the Supreme Court declined to comment on the existence of a malicious prosecution claim pursuant to the Fourteenth Amendment. *Id.* at 1337 n. 2. Since this decision, Courts in the Northern District of Illinois have explained that *Thompson* "did not overrule Seventh Circuit precedent holding that

a plaintiff subject to prosecution under Illinois law cannot bring a Fourteenth Amendment malicious prosecution claim" because Illinois law permits malicious prosecution claims. *Franklin v. Harvey City Det. Askew*, 2022 U.S. Dist. LEXIS 210428, at *18-19 (N.D. Ill. Nov. 21, 2022); *see, e.g.*, *Sneed v. Vill. Of Lynwood*, 2022 U.S. Dist. LEXIS 181434, at *3 (N.D. Ill. Oct. 4, 2022); *Navarro v. City of Aurora*, 2022 U.S. Dist. LEXIS 100424, at *2 (N.D. Ill. June 6, 2022). Plaintiff was prosecuted under Illinois law and he can file a state-law malicious prosecution claim – exhibited by Count VII of his Complaint – so his claim of malicious prosecution under the Fourteenth Amendment should be dismissed.

Further, in Count III Plaintiff makes two claims under the Fourth Amendment: a malicious prosecution claim and an unlawful detention claim. For Fourth Amendment claims, a plaintiff must show that: (i) the prosecution was instituted without any probable cause; (ii) the motive in instituting the prosecution was "malicious;" and (iii) a favorable termination of the underlying criminal prosecution. *Thompson*, 142 S. Ct. at 1338; *see, also*, *Navarro*, 2022 U.S. Dist. LEXIS 100424, at *5 (noting that the gravamen of a Fourth Amendment claim is the lack of probable cause). The second element of a "malicious" motive is often defined in this context as "without probable cause and for a purpose other than bringing the defendant to justice." *Thompson*, 142 S. Ct. at 1338. "Probable cause does not require certainty," but rather is "a fluid concept that relies on the common-sense judgment" looking at the totality of the circumstances. *Henderson v. Rangel*, 2022 U.S. Dist. LEXIS 154944, at *7 (N.D. Ill. Aug. 26, 2022). Looking at the pleaded facts, the ASA Defendants had no reason to know about the coercive tactics employed by officers during Plaintiff's interrogation, and Plaintiff does not allege that ASA Defendants employed similar tactics. Pursuant to the Complaint, after speaking to Plaintiff, additional suspects, and Miller, ASA Defendants believed there was sufficient probable cause to file charges against Plaintiff.

Accordingly, beyond conclusory language, Plaintiff does not sufficiently allege that ASA Defendants violated his Fourth Amendment rights.

Accordingly, the only claim in Count III that remains is an unlawful detention claim pursuant to the Fourteenth Amendment. However, such claims may proceed under § 1983 as a violation of the Fourth Amendment, but not the Fourteenth Amendment's Due Process Clause. *Moore v. City of Chicago*, 2020 U.S. Dist. LEXIS 101340, *9 (N.D. Ill. Jun. 10, 2020) (*citing Lewis v. Chicago*, 914 F.3d 472, 479 (7th Cir. 2019)). Indeed, since the ruling in *McDonough v. Smith*, 139 S.Ct. 2149 (2019), courts in this District have declined to dismiss a Fourteenth Amendment claim when a Fourth Amendment claim would persist because discovery would be coextensive for both claims. *See, e.g.*, *Mack v. City of Chicago*, 19 C 4001, 2020 U.S. Dist. LEXIS 222457, at *3 (N.D. Ill. Nov. 30, 2020) (Pallmeyer, J.); *Culp v. Flores*, 454 F.Supp.3d 764, 770 (N.D. Ill. Apr. 15, 2020) (Feinerman, J.); *Treadwell v. Chi. Police Officers David*, 2021 U.S. Dist. LEXIS 137647, at *9 (N.D. Ill. July 23, 2021). However, as stated, no viable Fourth Amendment claims exist. Therefore, Plaintiff's attempts to group-plead multiple claims under multiple constitutional authority should not stand, and his claim of unlawful detention under the Fourteenth Amendment should be dismissed.

For the foregoing reasons, Plaintiff's Complaint does not contain sufficient allegations to state a viable claim of either malicious prosecution or unlawful detention pursuant to either the Fourth or Fourteenth Amendments against ASA Defendants. Accordingly, Count III against ASA Defendants should be dismissed.

### D. Count IV Should Be Dismissed Because Plaintiff Has Failed to State a Valid Claim for Failure to Intervene.

For Plaintiff's failure to intervene claim, "the police are not obligated to adhere to the suggestions of the state's attorney's office, a separate and distinct organization with no command

authority over the Chicago Police Department." *Anderson v. Simon*, 217 F.3d 472, 476 (7th Cir. 2000); *see, also*, *Andrews*, 660 F. Supp. 2d at 876 n. 6. "Prosecutors called to police stations to memorialize a confession lack not only the legal authority to direct or limit law enforcement officers in their investigations, but also any practical means by which they can effectively intervene." *Patrick v. City of Chicago*, 213 F. Supp. 3d 1033, 1055 (N.D. Ill. 2016).

Here, ASA Defendants had no duty to intervene in any misconduct on behalf of Officer Defendants because the offices of ASA Defendants and Officer Defendants are separate entities, and ASA Defendants did not have command authority over Officer Defendants. Moreover, even assuming ASA Defendants had such a duty to intervene, dismissal of a failure to intervene claim is proper when the plaintiff does not allege facts that the pertinent defendants had reason to know a constitutional violation was being committed. *See Roehl v. Merrilees,* No. 11 C 4886, 2012 U.S. Dist. LEXIS 50253, at *24 (N.D. Ill. 2012); *see, also, Lanigan v. Village of E. Hazel Crest*, 110 F.3d 467, 477 (N.D. Ill. 1997). As stated, ASA Defendants had no reason to know a constitutional violation occurred to have the opportunity to intervene, exhibited by Plaintiff's allegations that all of the coercion and abuse was implemented by officers and that officers suppressed such tactics at all times. Here, Plaintiff's failure to intervene claim consists of insufficient labels and conclusions, and therefore it should be dismissed.

III. **SHOULD THIS COURT DETERMINE THAT ASA DEFENDANTS' CONDUCT IS NOT PROTECTED BY ABSOLUTE IMMUNITY, THEIR CONDUCT WAS REASONABLE AND IS THUS PROTECTED BY QUALIFIED IMMUNITY.**

Prosecutors may enjoy qualified immunity even if their actions do not fall under the absolute immunity umbrella. *Serrano v. Guevara,* 315 F. Supp. 3d 1026, 1034 (N.D. Ill. 2018); *Buckley,* 509 U.S. at 273. Like absolute immunity, the qualified immunity inquiry should also be resolved as soon as possible as it is immunity from suit. *Pearson v. Callahan,* 555 U.S. 223, 232 (2009). The qualified immunity inquiry is two-fold: whether the facts alleged set forth a violation

of a constitutional right, and whether the right was clearly established at the time of the alleged misconduct. *Pearson*, 555 U.S. at 232-236 (*citing Saucier v. Katz*, 533 U.S. 194, 200-01 (2001)). This inquiry turns on the objective legal reasonableness of the action and is assessed considering the legal rules that were clearly established at the time. *Pearson,* 555 U.S. at 243-44 (*citing Wilson v. Layne,* 536 U.S. 603, 614 (1999) (internal quotation marks omitted)). The court must evaluate whether it would have been clear at the time to a reasonable person in that position that his actions were unlawful, or "in other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards,* 556 U.S. 658, 664 (2012); *Koh,* 2013 U.S. Dist. LEXIS 136341, *37.

Outside of conclusory language and ambiguous group-pleading, Plaintiff does not allege that ASA Defendants knew about the coercive tactics employed by the officers or that ASA Defendants knew that the witness statements were false or a product of coercion. In other words, after a five-week long investigation, ASA Defendants merely spoke to witnesses after they made statements to police officers, which is not a violation of a clearly established right. Therefore, ASA Defendants at all times acted reasonably and are protected by qualified immunity.

Specifically for Plaintiff's failure to intervene claim, before 2012, there was not a clearly established right that a prosecutor must intervene. *See Serrano,* 315 F. Supp. at 1038-39 39; *see, also*, *Harris,* 330 F.R.D. at 516, n.8. To date, the Seventh Circuit has not explicitly recognized a failure to intervene claim against a prosecutor, although courts in this District are split on the issue. *Cf., e.g., Patrick*, 213 F. Supp. 3d at 1055 (declining to expand the law to recognize a failure to intervene claim to prosecutors) and *Andrews*, 660 F. Supp. 2d at 876 n.6 (same) with *Rodney Harris v. City of Chicago*, No. 15 CV 3859, 2015 WL 5445012, *3-4 (N.D. Ill. Sept. 15, 2015) (denying motion to dismiss plaintiff's failure to intervene claim against prosecutors) and *Saunders*

*v. City of Chicago*, No. 12 CV 09158, 2013 WL 6009933, *10 (N.D. Ill. 2013) (same). While even today there is a split in this District on the duty for a prosecutor to intervene in police misconduct, there was no clearly established right in 1999 for ASA Defendants to intervene in alleged misconduct of Officer Defendants. *See Bianchi v. McQueen*, 818 F. 3d 309, 323 (7th Cir. 2016) (qualified immunity applied where the law was unsettled). Therefore, ASA Defendants are entitled to qualified immunity.

## IV. WITH NO VIABLE FEDERAL LAW CLAIMS, PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED FOR LACK OF JURISDICTION.

With no viable claims under federal law, this Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims against ASA Defendants.[6] Compl. ¶¶181-93. This Court's exercise of jurisdiction over state claims is an exercise of supplemental jurisdiction. 28 U.S.C. §1367(c)(3). District courts may decline to exercise supplemental jurisdiction over a claim if it has dismissed the claim over which it has original jurisdiction. *See* 28 U.S.C. §1367(c)(3); *see, also*, *Arsberry v. Illinois*, 244 F.3d 558, 567 (7th Cir. 2001). As stated, Plaintiff's § 1983 claims should be dismissed, and ASA Defendants respectfully request this Court not to exercise supplemental jurisdiction over Plaintiff's state-law claims; but should this Court decide to do so, the conduct of ASA Defendants' is protected by absolute immunity under Illinois law. *See, e.g., White*, 369 Ill. App. 3d 765 (noting that Illinois courts have mirrored the pronouncement of absolute immunity in *Imbler*). Therefore, absolute immunity extends to ASA Defendants' conduct for Plaintiff's state law claims, which should be dismissed.

## V. PLAINTIFF'S INDEMNIFICATION CLAIM AGAINST DEFENDANT COOK COUNTY SHOULD BE DISMISSED TO THE EXTENT ASA DEFENDANTS ARE DISMISSED.

Plaintiff's indemnification claim seeks liability against Defendant Cook County, alleging

---

[6] Count VII (malicious prosecution), Count VIII (IIED), and Count IX (willful and wanton conduct).

that ASA Defendants were "acting at all relevant times within the scope of their employment" as "employees, members, and agents of Defendant Cook County" and that Defendant Cook County "is responsible to pay any judgment entered against" ASA Defendants. *See* Compl. ¶¶203-08. To the extent the claims against the ASA Defendants are dismissed, Count XII alleging indemnification against Defendant Cook County must also be dismissed. *See Kirk v. Michael Reese Hosp. and Med. Ctr.*, 117 Ill. 2d 507, 532 (1987).

## VII. IF THIS COURT DETERMINES NOT TO DISMISS PLAINTIFF'S CLAIMS, PLAINTIFF SHOULD BE REQUIRED TO PROVIDE A MORE DEFINITIVE STATEMENT OF HIS CLAIMS.

If this Court decides not to dismiss Plaintiff's claims against ASA Defendants, ASA Defendants respectfully respect this Court to require Plaintiff to provide a more definitive statement of his claims pursuant to Rule 12(e) so that ASA Defendants can properly respond to Plaintiff's Complaint. Fed R. Civ. P. 12(e). First, ASA Defendants request a more definitive statement because Plaintiff's ambiguous group pleading fails to sufficiently put ASA Defendants on notice of the claims brought against them. Second, ASA Defendants request a more definitive statement regarding allegations omitted from Plaintiff 's Complaint but are present in Plaintiff's PC Petition and in the Complaints his consolidated co-plaintiffs Gecht and Kwil.

### A. Plaintiff Should Be Required to Provide a More Definitive Statement of His Claims Because His Ambiguous Group Pleading Does Not Sufficiently Put ASA Defendants on Notice of the Claims Brought Against Them.

As stated in Section II-A above, Plaintiff repeatedly refers to the ambiguous collective "Defendants" in his Complaint. "This kind of [group] pleading is indeed inadequate, because it provides no clues as to whether, for the particular conduct described, plaintiff[ asserts] that each and every one of the defendants engaged in that conduct . . . or whether plaintiff[] instead contend[s] that only some of the defendants, or possibly even none of them, performed a given act." *Atkins*, 2015 U.S. Dist. LEXIS 80176, at *8-9 (N.D. Ill. 2015). Although the Federal Rules

permit a plaintiff leeway in the pleading stage, the policy behind such leeway is that there is an information imbalance between the parties at the pleading stage. *Perkins v. Wexford Health Sources, Inc.*, No. 15 C 6188, 2019 U.S. Dist. LEXIS 29227, at *7 (N.D. Ill. Feb. 25, 2019) (citing *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005)). Due to the decades of Plaintiff's previous legal proceedings and the discovery such litigations entail, there is no practical information imbalance between the parties.

The evidence in this case *is* in the hands of the Plaintiff and has been for years. As a result, Plaintiff was able to plead distinctions between "Police Officer Defendants" and "Prosecutor Defendants." Compl. ¶¶18, 21; *see, also, id.* ¶¶16, 19-22, 29, 31-43, 46, 49-53, 56-57, 60, 64-68, 71, 117, 129-36, 138, 141-42, 148, 150, 154, 156, 160, 162, 167, 182, 188, 191, 205-08. Yet, on multiple occasions Plaintiff weaves between naming specific groups of defendants and using the ambiguous "Defendants" throughout his Complaint.[7] Plaintiff repeatedly includes ASA Defendants in allegations involving the Chicago Police Department, so far as to even label ASA Defendants as police officers.[8] Plaintiff even includes ASA Defendants in his *Monell* claim against

---

[7] Plaintiff lays out a series of allegations regarding physical abuse/coercion by officers, but ambiguously uses "Defendants" although there are no allegations to support that ASA Defendants were present with Plaintiff at those times. *See id.* at ¶¶20, 32-46, 59, 70 144. Plaintiff makes a distinction that Defendant Hood participated in taking Kwil's statement and Defendant McGuire participated in taking Gecht's statement, but also alleges that "Defendants also obtained false confessions from [Gecht] and [Kwil]." *See id.* at ¶¶47, 55. Plaintiff states that Defendants Guevara and Halvorsen arrested and interrogated Miller, but states that she made her statement within twenty minutes of being picked up by "Defendants." *See id.* at ¶61. *See, also, id.* at ¶¶2, 3, 5, 11-12, 19, 21, 44, 47, 54, 58-59, 61, 69-70, 72, 76-77, 80, 84, 92-94, 106-107, 117, 133, 143-145, 147, 151, 153, 157, 159, 166, 183, 186, 189, 192-193, 197, 199.

[8] On multiple occasions, Plaintiff references members of the Police Department and includes ASA Defendants. *See* Compl. ¶¶92-94, 106. Plaintiff goes as far to allege that the City "failed to supervise or discipline its *police officers*, including Defendants Guevara and the other *Defendants*." *See id.* at ¶127 (emphasis added). Plaintiff alleges that Cook County was the employer of ASA Defendants, but alleges that the "City of Chicago … is or was the employer of the above-named *Officer Defendants*" and that "[e]ach of the *individual Defendants* named in this complaint acted … as agents or employees of the City of Chicago." *See id.* at ¶¶25-26 (emphasis added). *See, also, id.* at ¶¶161-67 (Count V) (where Plaintiff mentions Officer Defendants, the City of Chicago, and the Chicago Police Department throughout, but uses "these Defendants" in Paragraph 166).

the City of Chicago.[9] Plaintiff does not name ASA Defendants in his state-law conspiracy claim, yet claims that other torts were accomplished through the ambiguous "Defendants' conspiracy." *See id.* at ¶¶194-99. Perhaps most importantly, Plaintiff's Fourteenth Amendment Due Process claim begins and ends by discussing the misconduct of Officer Defendants, ending the claim stating that the misconduct was pursuant to the policies and practice of the City of Chicago and the Chicago Police Department. *Id.* at ¶¶128-39. However, without naming "ASA Defendants" collectively or individually, Plaintiff nevertheless uses the ambiguous collective "Defendants" in his claim, thereby making it unclear whether the claim is brought against ASA Defendants. *See id.* at ¶133.

By employing ambiguous group-pleading, Plaintiff leaves ASA Defendants to wonder whether various conduct in the Complaint are alleged to have been conducted by ASA Defendants either individually or collectively, which is inadequate. *See Atkins*, 2015 U.S. Dist. LEXIS 80176, at *8-9. Therefore, should this Court not dismiss Plaintiff's claims against ASA Defendants, they request this Court to order Plaintiff to provide a more definitive statement of his claims.

**B. Plaintiff Should Be Required to Provide a More Definitive Statement of His Claims to Include Deliberate Omissions.**

ASA Defendants request Plaintiff to be ordered to provide a more definitive statement of his claims, particularly involving allegations that are omitted from his Complaint but are present in Plaintiff's PC Petition and present in the operative complaints in the consolidated *Gecht/Kwil* matters. Specifically, these omissions involve the following allegations: (i) prior to Plaintiff's arrest, the police had received tips imputing Plaintiff in the Cruz murder; and (ii) Plaintiff Hernandez's statement to police was court-reported rather than just typed up by Police Officer

---

[9] In the *Monell* claim, Plaintiff names Police Officer Defendants, the Chicago Police Department, and the City of Chicago throughout (*see id.* at ¶¶168-80), but switches to using "Defendants" on two occasions. *See id.* at ¶¶171, 180.

Defendants and ASA Defendants. These facts go to whether probable cause existed prior to Plaintiff's arrest – a factor this Court may consider in determining whether ASA Defendants' conduct is protected by absolute immunity. *See Harris*, 330 F.R.D. at 515; *Whitlock,* 682 F.3d at 580; *Buckley I*, 509 U.S. at 274. In other words, it appears Plaintiff omitted these facts to limit this Court's analysis of whether the conduct of ASA Defendants is protected by absolute immunity.

On February 15, 2024, counsel for ASA Defendants sent to Plaintiff's counsel correspondence regarding the above-referenced omissions, particularly in light of Rule 11 of the Federal Rules of Civil Procedure. Thereafter, on March 4, 2024, counsel for Plaintiff and ASA Defendants met to confer regarding the same. Following the conference, ASA Defendants do not plan to make a request pursuant to Rule 11 at this time. However, Rule 11 is enlightening on why Plaintiff's omissions are relevant to ASA Defendants' request for a more definitive statement.

Rule 11(b) requires that pleadings must not be presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation. Fed. R. Civ. P. 11(b). Normally, for motions pursuant to Rule 12(b)(6) and 12(c), if "*matters outside of the pleadings* are presented to and not excluded by the court," the motion is converted to one for summary judgment and the plaintiff must have the opportunity to submit additional evidentiary support. Fed R. Civ. P. 12(d) (*emphasis added*); *see, also*, *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). However, this rule does not apply in two instances pertinent here. First, ASA Defendants' request for a more definitive statement is pursuant to Rule 12(e), and not Rules 12(b)(6) and 12(c). Second, documents attached to a motion to dismiss are considered "part of the pleadings" – and, thus not "matters outside of the pleadings" as mentioned in Rule 12(d) – when the documents are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *See Venture Assocs.*, 987 F.2d at 431. Although applying this standard is

unnecessary for ASA Defendants' request pursuant to Rule 12(e), doing so nevertheless establishes that his PC Petition is "part of the pleadings." Not only does Plaintiff reference in his Complaint (*see* Compl., ¶¶86-88) his PC Petition, but his PC Petition is central to his claims because it gives rise to his present allegations. Accordingly, in ASA Defendants' request for a more definitive statement pursuant to Rule 12(e), they may attach Plaintiff's PC Petition without converting the request into one for summary judgment. Thus, attached as <u>Exhibit A</u> is Plaintiff's PC Petition, which he filed on June 5, 2023. *See* <u>Exhibit A</u>: three (3) documents filed June 5, 2023 in *People v. Hernandez*, 99CR0722702: (i) Plaintiff Hernandez's Successive Petition for Post-Conviction Relief (hereinafter "Plaintiff's PC Petition"); (ii) Exhibit List; and (iii) "Exhibit 6: [Co-Plaintiff Gecht's] post-conviction successive petition for post-conviction relief, [filed] Oct. 7, 2020" (hereinafter "Gecht's PC Petition").

As stated in Section I above, whether probable cause exists and when it existed, particularly if prior to ASA Defendants' involvement, can be determinative of whether their conduct is protected by absolute immunity. *See Harris*, 330 F.R.D. at 515; *Whitlock,* 682 F.3d at 580; *Buckley I*, 509 U.S. at 274. Plaintiff pled in his PC Petition allegations that are pertinent to whether and when probable cause existed for Plaintiff to be charged. The allegations involve two sets of facts: first, evidence that officers received prior to Plaintiff's arrest that implicated Plaintiff in the shooting; and second, Plaintiff's statement was court-reported, rather than simply typed up by ASA Defendants.

### a. Plaintiff Omitted from His Complaint Allegations That Involve Evidence That Implicated Him as A Suspect in the Cruz Murder Prior to His Arrest.

Prior to ASA Defendants' involvement in the case, officers had received a series of leads that directed officers to believe Plaintiff was a suspect in the shooting of Decedent Cruz. In Gecht's PC Petition, it states as follows:

17. The day after the shooting, Detective Montilla received an anonymous phone call telling him that Ruben Hernandez ("Hernandez") and Benjamin DeJesus ("DeJesus"), were responsible for Cruz's murder. The tipster, a woman, stated that DeJesus and Hernandez were bragging that they had shot Cruz because Cruz owed DeJesus $6,000. The tipster also correctly stated that Cruz had been killed by his car shortly after leaving a bar in the area.

18. This information was shared with Detectives Guevara and Halvorsen, who pulled rap sheets and Central Booking Reports for Benjamin DeJesus and Ruben Hernandez. DeJesus matched the description Wilfredo Rosa gave: he was known by the nickname "Fridge," was 6'3" tall, weighed 215 pounds, and had a goatee. Guevara and Halvorsen also called Cruz's mother, who informed them that Cruz was enemies with Hernandez and DeJesus.

Exhibit A, at 14-15, ¶¶17-18 (internal citations omitted). Although Plaintiff incorporated in his PC Petition all of the facts and allegations in Gecht's PC Petition, these above-referenced allegations are missing from Plaintiff's Complaint, yet they are present in Gecht's and Kwil's Complaints.

As an initial matter, it is clear that Plaintiff Hernandez's Complaint mirrors – and often directly copies – the operative complaints in the *Gecht/Kwil* matters. Dozens of paragraphs between the three operative Complaints are verbatim identical to one another, including typographical errors. While there are some that differ, only a select few are entirely omitted. Particularly, both Plaintiffs Gecht's and Kwil's Complaints state as follows:

[1] The day after the shooting, an anonymous caller informed Detectives that the men responsible for Cruz's murder were Ruben H. ("Ruben") and Benjamin D. ("Benjamin").

[2] The caller provided accurate corroborating details: that Ruben and Benjamin were bragging that they had shot Cruz because Cruz owed Benjamin $6,000. The tipster also correctly stated that Cruz had been killed by his car shortly after leaving the bar in the area.

[3] This information was shared with Detectives Guevara and Halvorsen, who pulled rap sheets and Central Booking Reports for Benjamin and Ruben.

[4] Benjamin matched the description Wilfredo Rosa gave: he was known by the nickname "Fridge," was 6'3", weighed 215 pounds, and had a goatee. Guevara and Halvorsen also called Cruz's mother, who informed them that Cruz was enemies with Ruben and Benjamin.

[5] Guevara and Halvorsen found that Benjamin and Ruben had been arrested and charged of other felony crimes together. They were also suspected of committing an armed robbery together that took place two weeks after the Cruz shooting, which was being investigated by Defendant Pergande.

[6] The day after the shooting, Detective Montilla received an anonymous phone call telling him that Ruben Hernandez ("Hernandez") and Benjamin DeJesus ("DeJesus"), were responsible for Cruz's murder. The tipster, a woman, stated that DeJesus and Hernandez were bragging that they had shot Cruz because Cruz owed DeJesus $6,000. The tipster also correctly stated that Cruz had been killed by his car shortly after leaving a bar in the area.

[7] This was the only lead pointing to any possible suspects.

*Gecht*, ECF No. 95, at ¶¶34-39; *Kwil*, ECF No. 50, at ¶¶30-35. These paragraphs are missing from Plaintiff Hernandez's Complaint, although paragraphs surrounding the aforementioned paragraphs in Gecht's and Kwil's Complaints are verbatim present in Plaintiff's Complaint.

All of these allegations – that an anonymous caller stated Ruben Hernandez was bragging about the shooting, regarding the financial motive behind the shooting, and that he was an enemy of the decedent – directly relate to whether probable cause existed to arrest and charge Plaintiff Hernandez. These facts directly apply to this Court's analysis of whether ASA Defendants' conduct was protected by absolute immunity. *See Harris*, 330 F.R.D. at 515; *Whitlock,* 682 F.3d at 580; *Buckley I*, 509 U.S. at 274. Because these allegations were included in Plaintiff's PC Petition and in Co-Plaintiffs Gecht's and Kwil's operative Complaints – that contain dozens of nearly-identical paragraphs – we believe Plaintiff omitted these facts from his Complaint to limit the Court's analysis of the applicability of absolute immunity, to which ASA Defendants are entitled.

### b. Plaintiff Omitted from His Complaint Allegations That His Statement to Police Was Court-Reported.

Next, in Plaintiff Hernandez's PC Petition, he alleges that he gave a court-reported statement to a prosecutor on the case. *See* Exhibit A, at 4, ¶12 (alleging that "Guevara was present

when Hernandez gave the subsequent court reported statement to the prosecutor on felony review). Both Plaintiffs Gecht and Kwil allege in their operative Complaints that Plaintiff Hernandez's statement to police was court-reported. *Gecht*, Dkt. 95, at ¶¶69; *Kwil*, Dkt. 50, at ¶¶61. And yet, these allegations are missing from Plaintiff Hernandez's Complaint.

Whether a court-reporter was present for Plaintiff Hernandez's statement is probative of whether probable cause existed for him to be arrested and charged for the murder of decedent Cruz. For the same reasons listed above, these facts – as alleged by Plaintiffs Gecht and Kwil in their Complaints and as alleged by Plaintiff Hernandez in his PC Petition – were omitted from his Complaint to limit the Court's analysis of whether ASA Defendants' conduct was protected by absolute immunity. *See Harris*, 330 F.R.D. at 515; *Whitlock,* 682 F.3d at 580; *Buckley I*, 509 U.S. at 274.

### c. Requiring Plaintiff to Provide a More Definitive Statement of His Claims to Include the Omissions Is Proper Because the Allegations Are Included in the Consolidated Matters and Plaintiff's PC Petition.

If this Court is inclined not to dismiss Plaintiff's claims against County Defendants, Plaintiff should be required to provide a more definitive statement of his claims to address the aforementioned omissions. If this Court is not inclined to order Plaintiff to include in his Complaint specific allegations, ASA Defendants request this Court to order Plaintiff to amend his Complaint and attach as an exhibit his PC Petition. In this instance, the aforementioned omissions would be part of the pleadings, which ASA Defendants could address in their subsequent motion to dismiss that could be part of this Court's analysis of whether ASA Defendants' conduct is protected by absolute immunity.

Plaintiff jumps through stylistic hoops to attempt to mislead this Court – through ambiguous group-pleading and deliberate omissions – into allowing his unwarranted claims against ASA Defendants survive this motion to dismiss stage and thus drag ASA Defendants

29

through costly and lengthy litigation. At worst, Plaintiff deliberately misleads the reader of his Complaint to incorrectly impute to ASA Defendants the actions of other Defendants. At best, even assuming the aforementioned omissions were not deliberate, Plaintiff's lackluster group-pleading leaves ASA Defendants to wonder which of many allegations are asserted against them in order to properly respond to them. *See Atkins*, 2015 U.S. Dist. LEXIS 80176, at *8-9. Therefore, should this Court not dismiss Plaintiff's claims against ASA Defendants in their entirety, ASA Defendants request this Court to order Plaintiff to amend his Complaint to provide a more definitive statement of his claims, including an order to either: (i) include the above-referenced omissions as included in Plaintiff's PC Petition, or (ii) attach as an exhibit to Plaintiff's Complaint his PC Petition, which is already referenced in his Complaint and is central to his claims.

## CONCLUSION

Wherefore, based on the foregoing reasons, County Defendants respectfully request that this Court: (1) dismiss Plaintiff's claims against County Defendants in their entirety; (2) or, alternatively, require Plaintiff to amend his Complaint and provide a more definitive statement of his claims, including an order to either include the aforementioned omissions or to attach as an exhibit Plaintiff's PC Petition; and (3) any other relief this Court deems proper.

In the alternative, Defendant Cook County respectfully requests that an order be entered that states: 1) There is no basis for liability on the part of the County articulated in Plaintiff's Complaint; 2) the County remains in this case solely for the purpose of indemnification; 3) the County is excused from any discovery obligations, and 5) for such other and further relief as the Court deems necessary and appropriate.

Respectfully submitted,

/s/   Michael J. Czopkiewicz
Attorney for ASA Defendants,
      Hon. Michael J. Hood,
      Brendan McGuire

Michael J. Czopkiewicz
Sean O'Callaghan
O'Mara & O'Callaghan, LLC
230 W. Monroe, Suite 2620
Chicago, IL 60606
Phone: (312) 600-5588
michael.c@O2lawyers.com
Sean.OCallaghan@O2lawyers.com


/s/ Kelli Huntsman
Attorney for Cook County
Kelli Huntsman
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, Illinois 60602
Kelli.huntsman@cookcountysao.org
(312) 603-7379

## CERTIFICATE OF SERVICE

I, Michael J. Czopkiewicz, an attorney, hereby certify that I caused the above **County Defendants' Motion to Dismiss Plaintiff's Complaint, or, Alternatively, for a More Definitive Statement** to be served on all counsel of record via ECF Filing on March 5, 2024.

By: /s/   *Michael J. Czopkiewicz*
*Attorney for Defendants Hood and McGuire*

1