IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| DAVID GECHT, PLAINTIFF, VS. REYNALDO GUEVARA, ET AL., DEFENDANTS. | } } | 1:23-CV-01742 |
| | } | |
| CONS. WITH: | } | Hon. Nancy L. Maldonado |
| | } | |
| RICHARD KWIL, PLAINTIFF, VS. REYNALDO GUEVARA, ET AL., DEFENDANTS. | } } | 1:23-CV-04279 |
| | } | |
| CONS. WITH: | } | |
| | } | |
| RUBEN HERNANDEZ, PLAINTIFF, VS. REYNALDO GUEVARA, ET AL., DEFENDANTS. | } } | 1:23-CV-15375 |
| | } | |

**<u>PLAINTIFF RUBEN HERNANDEZ'S RESPONSE TO THE PROSECUTOR DEFENDANTS' MOTION TO DISMISS, OR, ALTERNATIVELY, FOR A MORE DEFINITE STATEMENT</u>**

### TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

BACKGROUND ........................................................................................................ 1

LEGAL STANDARD ................................................................................................ 2

ARGUMENT ............................................................................................................ 3

I.   ASA DEFENDANTS CANNOT AVAIL THEMSELVES OF PROSECUTORIAL IMMUNITY ............................................................................................................ 3

II.  PLAINTIFFS' CLAIMS AGAINST THE PROSECUTOR DEFENDANTS ARE ALLEGED WITH SUFFICIENT DETAIL AND ARE NOT BARRED BY ANY APPLICABLE LEGAL DOCTRINE ...................................................... 8

  A. Hernandez's Complaint Contains Sufficient Allegations Directed Specifically at the Prosecutor Defendants to Satisfy the Liberal Pleading Standard Under Rule 8 .................................................................................... 9

  B. Hernandez's Complaint Sufficiently Alleges That the ASA Defendants Violated His Fifth and Fourteenth Amendment Rights ...................................11

  C. Hernandez's Complaint Sufficiently Alleges Fourth and Fourteenth Amendment Claims for Malicious Prosecution and Unlawful Detention .......................... 14

  D. Hernandez Sufficiently Alleges Claims Against the ASA Defendants for Failure to Intervene ................................................................................ 16

III.  QUALIFIED IMMUNITY DOES NOT BAR HERNANDEZ'S CLAIMS
AGAINST THE ASA DEFENDANTS  ................................................ 17

IV.  HERNANDEZ'S STATE LAW CLAIMS AND INDEMNIFICATION CLAIMS
MUST BE ALLOWED TO PROCEED  ............................................... 19

V.  THE ASA DEFENDANTS ARE NOT ENTITLED TO A MORE
DEFINITE STATEMENT OF THE CLAIMS AGAINST THEM  ....................................... 20

   A.  Hernandez Adequately Puts ASA Defendants on Notice  .............................. 20

   B.  Hernandez Should Not Be Required to Include "Deliberate Omissions"
   as Part of a More Definite Statement  ............................................ 22

CONCLUSION  ...................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

*Armstrong v. Daily*, 786 F.3d 529, 556 (7th Cir. 2015) ................................................................ 18

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................................ 2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ............................................................ 2, 3

*Board of Trustees v. Illinois Range, Inc.*, 186 F.R.D. 498, 504 (N.D. Ill. 1999) .....................3, 21

*Brightbill Corp. v. Hellstrom*, 1985 WL 1304, *1 (N.D. Ill. May 7, 1985) ............................... 20

*Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009) ....................................................................... 10

*Brown v. City of Chicago*, 633 F. Supp. 3d 1122, 1154 (N.D. Ill. 2022) .................................... 18

*Buckley v. Fitzsimmons*, 509 U.S. 259, 260, 269 (1993) ......................................................... 3, 4, 5

*Burke v. Larkin Law Firm, PC*, 2007 WL 917380, *2 (S.D. Ill.) ............................................... 22

*Burns v. Reed*, 500 U.S. 478, 586-487 (1991) ............................................................................... 3

*Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972) ..................................................................... 16, 19

*Carter v. City of Chicago*, No. 17-CV-7241, 2018 WL 1726421, at *5
  (N.D. Ill. Apr. 10, 2018) ........................................................................................................ 13

*Chatman v. City of Chicago*, 2015 WL 1090965, at *10 (N.D. Ill. Mar. 10, 2015) .................... 16

*Childress v. Walker*, 787 F.3d 433, 439-40 (7th Cir. 2015) ......................................................... 12

*Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982) ................................................................. 13

*Culp v. Flores*, 454 F. Supp. 3d 764 (N.D. Ill. 2020) ................................................................. 15

*D 56, Inc. v. Berry's, Inc.*, 1996 WL 252557, at *10 (N.D. Ill. 1996) .................................... 3, 20

*Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008) ......................................................... 18

*Engel v. Buchan*, 710 F.3d 698, 710 (7th Cir. 2013) ................................................................... 10

*Fields v. Wharrie*, 672 F.3d 505, 510 (7th Cir. 2012) ................................................................. 4

*Forrester v. White*, 484 U.S. 219, 224 (1988) ............................................................................. 3

*Fulton v. Bartik*, 547 F. Supp. 3d 799, 810-11 (N.D. Ill. 2021) ............................................ 10, 16

*Gray v. City of Chi.*, No. 18 C 2624, 2019 WL 3554239, at *5 (N.D. Ill. Aug. 1, 2019) ........... 10

*Hampton v. Chicago*, 484 F.2d 602, 608, cert. denied, 415 U.S. 917 (1974) .............................. 4

*Harris v. City of Chicago*, 330 F.R.D 508, 515 (N.D. Ill. Eastern Division, 2018) ................ 5, 16

*Heidelberg v. Manias*, 503 F.Supp.3d 758, 790 (C.D. Ill. 2020) ............................................... 17

*Hill v. Coppleson*, 627 F.3d 601, 605 (7th Cir. 2010) ................................................................. 4

*Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ................................................................................... 19

*Hunt v. Jaglowski*, 926 F.2d 689 (7th Cir. 1991) ......................................................................... 7

*Illinois v. Gates*, 462 U.S. 213 (1983) ................................................................................... 22, 23

*Jakes v. Boudreau*, 2023 WL 3585629, at *9 ............................................................ 12

*Kuri v. City of Chicago*, 2017 WL 4882338, at *7 (N.D. Ill. Oct. 30, 2017) ......................... 8, 14

*Lewis v. Chicago*, 914 F.3d 472, 480 (7th Cir. 2019) ................................................. 15

*Lewis v. Mills*, 677 F.3d 324, 331 (7th Cir. 2012) ...................................................... 5

*Mack v. Chicago*, 2020 WL 7027649, at *3 (N.D. Ill. Nov. 30, 2020) ................................. 15

*McDonald v. Household Intern., Inc.*, 425 F.3d 424 (7th Cir. 2005) ................................. 15

*McDonough v. Smith*, 139 S. Ct. 2149, 2155 n.2 (2019) ............................................. 15

*Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) .................................................... 12

*Myett v. Chicago Police Detective Edward Heerdt*, 232 F. Supp. 3d 1005,
1027 (N.D. Ill. 2017) ............................................................................... 8, 14

*Orange v. Burge*, 2008 WL 4443280, at *11 (N.D Ill. Sept. 29, 2008) ................................ 6

*Patrick v. City of Chicago*, 213 F. Supp. 3d 1033, 1051 (N.D. Ill. 2016) .................... 6, 7, 16, 17

*Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017) .................................................... 12

*Rivera v. Lake County*, 974 F. Supp. 2d 1179, 1191 (N.D Ill. 2013) ................................ 16

*Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) ................................................. 2

*Saunders v. City of Chicago*, 2013 WL 6009933, *10 (N.D. Ill. 2013) .............................. 16

*Smith v. Burge*, 2016 WL 6948387, at *10 (N.D. Ill. Nov. 28, 2016) ............................... 16

Swanson v. Citibank, N.A., 614 F.3d 400, 405 (7th Cir. 2010) ...................................... 2

*Taha v. International Brotherhood of Teamsters*, Local 781, 947 F.3d 464, 469
(7th Cir. 2020) ...................................................................................... 2

*Thompson v. Clark*, 142 S. Ct. 1332 (2022) ..................................................... 8, 14, 15

*Tillman v. Burge*, 813 F. Supp. 2d 946, 973 (N.D. Ill. 2011) ......................................... 6

*Vanguard Financial Service Corp. v. R W Professional Leasing Services Corp.*,
1998 WL 774984 (N.D. Ill.) ......................................................................... 23

*Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012) ..................................... 16

*Wilson v. Est. of Burge*, 2023 WL 2750946, at *22 (N.D. Ill. Mar. 31, 2023) ..................... 6, 7

*Winn v. Chicago*, 2022 WL 80272, at *3 (N.D. Ill. Jan. 6, 2022) .................................... 15

*Wright v. Chicago*, 2021 WL 736234, at *2 (N.D. Ill. Feb. 25, 2021) ............................... 15

*Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) ................................................ 16, 19

*Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000) ........................................... 2

5C Wright & Miller, *Federal Practice and Procedure* § 1376 (3d ed. 2012) .......................... 20

## BACKGROUND

In his Complaint (ECF No. 1), Hernandez describes his claims, to the best of his ability at this stage of the litigation, that ASA Defendants, along with Reynaldo Guevara, Ernest Halvorsen, Alan Pergande, Michael Muzupappa, Robert Rutherford, Edwin Dickinson, Francis Cappittelli, and other unknown law enforcement officers (collectively, the "Police Officer Defendants"), acted in concert and in their own ways, to coerce and fabricate false statements in order to secure convictions against otherwise innocent men and solve a crime that had not been diligently investigated. The allegations of Hernandez's complaint set out at great length the torture he endured, along with the countless abusive practices carried out by Police Officer Defendants over the years.

In January 1999, someone shot Roberto Cruz outside of Bristol's nightclub. Hernandez Complaint (ECF No. 1), ¶¶ 24, 26. The only eyewitness at Bristol's nightclub described an altercation with two men, neither of whom matched Hernandez's description. Compl. ¶¶ 27-28. After five weeks of an otherwise stagnant investigation, Police Officer Defendants and ASA Defendants "solved" the crime in a single night after extracting coerced, falsified statements from the combined Plaintiffs. *Id.* ¶ 29. Hernandez's complaint sets forth in abundant detail how he was physically abused and his will eroded. *Id.* ¶¶ 32-54. Hernandez endured horrific physical and mental abuse, including beatings and choking. *Id.* ¶¶ 32-33, 35, 38.

Defendants confined Hernandez to a small, uncomfortable interrogation room and spoon-fed Defendants' theories of the murder for hours on end. *Id.* ¶¶ 34, 36, 38. When Hernandez repeatedly invoked his right to remain silent, the Police Officer Defendants ignored those rights and continued the interrogation. *Id.* ¶ 39. Where possible, Hernandez identifies actions as performed by one of three groups: the "Police Officer Defendants", the "ASA Defendants" (where

possible identified separately as Defendant Hood or Defendant McGuire), or where both groups acted in concert, the collective "Defendants."

## **LEGAL STANDARD**

A motion pursuant to Rule 12(b)(6) seeks dismissal of the complaint based upon a failure of the complaint to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). This Rule is subject to certain specificity requirements, neither of which pose a particularly high bar. In deciding a Rule 12(b)(6) motion, the Court "tak[es] all well-pleaded allegations of the complaint as true and view[s] them in the light most favorable to the plaintiff." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quoting *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000)). The Court also draws reasonable inferences in the Plaintiff's favor. *Taha v. International Brotherhood of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020).

A complaint need only contain sufficient factual allegations, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In other words, the complaint must set forth "a short and plain statement of the claim" which shows Hernandez is entitled to relief. Fed. R. Civ. P. (8)(a)(2). Hernandez need merely "give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010).

Rule 12(e), which the ASA Defendants rely upon in the alternative, applies when the pleadings are "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Motions under this Rule should not be allowed as a "substitute for discovery"

(*Board of Trustees v. Illinois Range, Inc.*, 186 F.R.D. 498, 504 (N.D. Ill. 1999); fact-finding and narrowing the issues are for the "variety of pretrial discovery procedures." *D 56, Inc. v. Berry's, Inc.*, 1996 WL 252557, at *10 (N.D. Ill. 1996) (denying a Rule 12(e) motion where "defendants could respond to the allegations with a simple affirmation or denial, in good faith and without prejudice to themselves.").

## ARGUMENT

Hernandez's complaint meets the pleading standards set forth in the Rules and in *Iqbal* and *Twombly*. He states sufficient facts to entitle him to relief and does so with enough specificity (with the facts available to him at this stage of the litigation) that the ASA Defendants are able to respond to the allegations, in good faith, with a simple affirmation or denial. Further, as Hernandez demonstrates, ASA Defendants cannot avail themselves of immunity-based protections. As such, the ASA Defendants' motion should be denied.

## I.   ASA DEFENDANTS CANNOT AVAIL THEMSELVES OF PROSECUTORIAL IMMUNITY.

The Court must reject the ASA Defendants' absolute immunity arguments because their conduct was investigatory rather than quasi-judicial. The ASA defendants have, and fail to meet, the burden "of showing that such immunity is justified for the function in question." *Buckley v. Fitzsimmons*, 509 U.S. 259, 260, 269 (1993) (internal quotations and citations omitted).

The Supreme Court has "been 'quite sparing' in recognizing absolute immunity for state actors" in the Section 1983 context. *Id.* (quoting *Forrester v. White*, 484 U.S. 219, 224 (1988)). Indeed, the presumption is *against* absolute immunity. *Id.*, at 278, citing *Burns v. Reed*, 500 U.S. 478, 586-487 (1991). In short, "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Id.* at 273. Instead, prosecutors are only shielded by immunity for actions "undertaken in furtherance of [their] prosecutorial duties," and whether an

action qualifies as "prosecutorial" is a functional test, not a formal one. *Fields v. Wharrie*, 672 F.3d 505, 510 (7th Cir. 2012); *Buckley*, 509 U.S. at 277. Prosecutorial actions, those that are "intimately associated with the judicial phase of the criminal process," are immunized, but investigative actions, even if performed by a prosecutor, are not. *Hill v. Coppleson*, 627 F.3d 601, 605 (7th Cir. 2010) (internal quotation marks and citations omitted); *Buckley*, 509 U.S. at 270.

Conversely, investigatory actions are, for example, those "normally performed by a detective or police officer…" *Buckley*, 509 U.S. at 273-274 (citing *Hampton v. Chicago*, 484 F.2d 602, 608, cert. denied, 415 U.S. 917 (1974). Other investigatory actions are the pre-prosecution fabrication of evidence. *Fields v. Wharrie*, 740 F.3d 1107, 1113 (7th Cir. 2014). Another investigatory act is the eliciting of a confession. "[A] determination that [defendant] did not confess until his meeting with [ASA Defendant] would indicate that [ASA Defendant] was likely acting in the role of an investigator searching for more evidence…" *Hill v. Coppleson*, 627 F.3d 601, 605-606 (7th Cir. 2010).

ASA Defendants, in their motion, attempt to frame their involvement as being only on the "final day of a five-week investigation", as if their presence was a minimal blip in a productive, weeks-long investigation by the Police Officer Defendants. ASA Def's Motion to Dismiss, pg. 6. The Court must reject this crabbed position as Hernandez clearly alleges those five weeks involved "no progress". Compl. (ECF No. 1), ¶ 29. In other words, Hernandez alleges the ASA Defendants were present for a significant part, if not a majority, of the investigation into the murder of Roberto Cruz.

The complaint clearly alleges that the ASA Defendants were personally involved in the fabrication and extraction of false statements from Hernandez, Gecht, Kwil, and Colleen Miller. Compl. ¶¶ 40-48, 55-59, 66-70, 140-148. Hernandez alleges that the ASA Defendants did more

than merely "verify the confession" as the ASA Defendants claim. He alleges that the ASA Defendants personally and actively participated in interrogations and the creation of various false statements. Compl. ¶¶ 42, 47-48, 55-58, 66-70.

Hernandez paints a clear picture that the ASA Defendants and Police Officer Defendants conspired to, in one single night, bring in four individuals and extract false statements supporting their own, personal theory of events, and use those false statements to improperly obtain unjust convictions. The discovery process will provide further facts and evidence of what actions were taken by the ASA Defendants, in conjunction with Police Officer Defendants, outside of Hernandez's presence.

These are investigative actions not shielded by absolute immunity. Simply put, it defeats absolute immunity for a prosecutor to participate in the fabrication of false statements, as Hernandez alleges the ASA Defendants did here. *Lewis v. Mills*, 677 F.3d 324, 331 (7th Cir. 2012) "[A] showing that a prosecutor investigated and fabricated evidence against a target would automatically defeat absolute prosecutorial immunity." *Id*. Even *Harris v. City of Chicago*, a case to which ASA Defendants cite for the application of absolute immunity, recognizes that "a determination of probable cause does not guarantee a prosecutor absolute immunity from liability for all actions taken afterwards." *Harris*, 330 F.R.D 508, 515 (N.D. Ill. Eastern Division, 2018), citing *Buckley v. Fitzsimmons*, 509 U.S. 259 at 274 n.5 (1993).

The allegations against the ASA Defendants sufficiently support the very reasonable inference that they had full knowledge of the coercion and physical abuse of the combined Plaintiffs. ASA Defendants cannot reasonably claim that a person beaten, choked, and tortured into confession will show no visible signs of abuse. This eliminates the absolute immunity defense for their role in the fabrication of that statement as well as the statements of witnesses who were

coerced into falsely implicating each other. *See Tillman v. Burge*, 813 F. Supp. 2d 946, 973 (N.D. Ill. 2011); *Orange v. Burge*, 2008 WL 4443280, at *11 (N.D Ill. Sept. 29, 2008) (finding the defendant prosecutor was present in and around the interrogation rooms and "whether [the prosecutor] heard audible shouts or screams, or otherwise had constructive knowledge of the alleged torture… are questions for the factfinder."); *Wilson v. Est. of Burge*, 2023 WL 2750946, at *22 (N.D. Ill. Mar. 31, 2023) (finding the defendant prosecutor who was present during the torture and participated in the coercion and fabrication of the statement was not entitled to absolute immunity).

Defendant Hood is also alleged to have been present throughout the night—in physical proximity to the physical and psychological abuses that were producing the false statements. Compl. ¶¶ 42, 55-58. Like Defendant McGuire, Hood took an obviously false statement from an innocent man that police had interrogated for many hours—walking him through a false scenario that all Defendants created. He is no more immune than the prosecutor defendants in *Patrick v. City of Chicago*, 213 F. Supp. 3d 1033, 1051 (N.D. Ill. 2016), who participated in securing false confessions from six individuals at the Belmont and Western area headquarters. Like the ASA Defendants here, the felony review assistants in *Patrick* claimed to honestly believe the truth of the confessions they secured. That contention was insufficient to establish absolute immunity, even at the later summary-judgment stage of the case. *Patrick*, 213 F. Suppl. 3d at 1051. The court reasoned that there was a material dispute of fact as to whether the ASAs participated in coercive interrogations, fabricated confessions, and reduced those confessions to writing, actions that were "incompatible with probable cause and the performance of core prosecutorial functions." *Id*. Critically, the prosecutors' claim that probable cause existed prior to their involvement in the

interrogations did not shield their later actions, even if they had "initially and honestly believed probable cause existed." *Id*. at 1057.

Given McGuire and Hood's presence at the police station during the respective interrogations and prior to the confessions and their roles in composing, coercing and fabricating the respective confessions, the ASA Defendants cannot shield their horrific misconduct with absolute immunity. Their actions in the police station, themselves creating fabricated evidence later used against consolidated Plaintiffs, are investigative in nature.

The ASA Defendants cite *Hunt v. Jaglowski*, 926 F.2d 689 (7th Cir. 1991)—which predates the authority cited above—but this case does not support the ASA Defendants with respect to the allegations here. In *Hunt*, the prosecutor was not present during the coerced confession. *Id*. at 692-93. He was elsewhere when Hunt was arrested, when the confession was first given to officers, and when Hunt was beaten. *Id*. at 692-93. The prosecutor did not arrive at the area headquarters until after Hunt had confessed. *Id*. at 693.

Here, the ASA Defendants were both present at Area 5 when Hernandez, Gecht, Kwil and Colleen Miller were coerced and abused. The ASA Defendants were present when Hernandez's, Gecht's and Kwil's denials were repeatedly rejected by the Police Officer Defendants and when their will was broken, and they falsely confessed. The ASA Defendants, unlike in *Hunt*, were engaged in the fabrication. *Cf. Patrick v. City of Chicago*, 213 F. Supp. 3d 1033, 1045-46 (N.D. Ill. 2016) (plaintiff alleged the prosecutor was present during, and helped police officers obtain, his coerced confession); see also *Wilson v. Est. of Burge*, 2023 WL 2750946, at *22 (N.D. Ill. Mar. 31, 2023).

Finally, the ASA Defendants point to the claimed existence of probable cause as a basis to invoke absolute immunity. However, Hernandez alleges each and every one of the suspect and

witness statements obtained on the night in question was involuntary, false, and fabricated. *See* Compl. ¶¶ 41, 48, 51, 54, 65. As alleged, there was nothing establishing probable cause, and the available evidence actually undermined the existence of probable cause.

Fabricated evidence is "[evidence] that is made up; it is invariably false. False [evidence] is the equivalent; it is [evidence] known to be untrue by the witness and by whoever cajoled or coerced the witness to give it." *Wharrie*, 740 F.3d at 1110. It is clear that "[d]efendants cannot manufacture their own probable cause by fabricating evidence and manipulating witnesses." *Kuri v. City of Chicago*, 2017 WL 4882338, at *7 (N.D. Ill. Oct. 30, 2017) (citing *Myett v. Chicago Police Detective Edward Heerdt*, 232 F. Supp. 3d 1005, 1027 (N.D. Ill. 2017)). Hernandez alleges facts that should have led a reasonable prosecutor to the conclusion that none of the suspect and witness statements were truthful. In sum, legitimate probable cause never existed.

As in 1999, the ASA Defendants present their own version of events, one rejected by Hernandez. For these reasons, the ASA Defendants' arguments that they are entitled to absolute immunity must be rejected.

## II. PLAINTIFFS' CLAIMS AGAINST THE PROSECUTOR DEFENDANTS ARE ALLEGED WITH SUFFICIENT DETAIL AND ARE NOT BARRED BY ANY APPLICABLE LEGAL DOCTRINE.

Section II of the ASA Defendants' motion is based on four theories for dismissal: (1) Hernandez's use of "group pleading" is claimed to make it "impossible" for the ASA Defendants to identify the allegations directed against them; (2) Count II fails to sufficiently allege the ASA Defendants' participation in the coercion of consolidated Plaintiffs' confessions; (3) Count III fails to sufficiently allege claims under *Thompson v. Clark*, 142 S. Ct. 1332 (2022), for malicious prosecution and unlawful detention; and (4) Count IV fails to allege a viable claim against the ASA Defendants for failure to intervene. The ASA Defendants' position cannot withstand scrutiny.

**A. Hernandez's Complaint Contains Sufficient Allegations Directed Specifically at the Prosecutor Defendants to Satisfy the Liberal Pleading Standard Under Rule 8.**

Hernandez's complaint identifies two individual defendant groups: (a) the Police Officer Defendants (consisting of the individual Chicago Police officers who investigated the Cruz murder but excluding Defendant Cappitelli, the sergeant who supervised them) and (b) the ASA Defendants (consisting of Defendants McGuire and Hood and other as yet unknown prosecutors who may have participated in the coercion and fabrication of the statements of consolidated Plaintiffs and witnesses). *See* Compl. ¶¶ 41, 48, 51, 54, 65. Hernandez, where appropriate, refers to "Defendants," a term that encompasses all the individual defendants: the police officers, the prosecutors, and Defendant Cappitelli, the supervisor of the Police Officer Defendants. Hernandez, where possible, specifies the particular individual defendant who committed specific wrongful acts.

The ASA Defendants contend that this style of pleading is impermissible and that the ASA Defendants do not have "adequate notice as to how each was purportedly *personally* involved in the conduct described." Def. Mot. at 11 (emphasis original). Defendants McGuire and Hood claim they are left in the dark as to how each of them participated personally in the fabrication of statements and contend that the allegations against them are "bare conclusions." These assertions are not credible.

A plain reading of the complaint suffices to inform the ASA Defendants what they are accused of. Both Hood and McGuire are alleged to have been continuously at Area Five during the many hours that the Police Officer Defendants spent psychologically and physically abusing the suspects and witnesses. See Compl. ¶ 40 ("Eventually, the Police Officer Defendants took Plaintiff to meet with [McGuire]"), ¶ 42 ("Defendant Hood was present at the [station] while Plaintiff's interrogation was ongoing. Defendant M[c]Guire *actively participated*…in the

interrogation…") (emphasis added). Similar allegations are set forth for their treatment of Gecht and Kwil.

It is worth mentioning that at the time of his interrogation, Hernandez's entire world consisted of a small, concrete interrogation room with a single bench. At this stage of the proceedings, he cannot be expected to identify each and every individual wrong conducted in or outside of his presence. Especially when, as alleged, the Defendants took steps to conceal what they had done. Hernandez's allegations set out that the ASA Defendants coordinated with the Police Officer Defendants to create a theory of the case, their own version of events, and extract false statements supporting that theory, regardless of the truth.

Further, group pleading is proper in cases such as this one. *See, e.g., Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009) (allegations directed at all defendants were sufficient); *Gray v. City of Chi.*, No. 18 C 2624, 2019 WL 3554239, at *5 (N.D. Ill. Aug. 1, 2019) (collecting cases); *Fulton v. Bartik*, 547 F. Supp. 3d 799, 810-11 (N.D. Ill. 2021) (approving a complaint with a group pleading approach identical to the one in this case); and *cf. Engel v. Buchan*, 710 F.3d 698, 710 (7th Cir. 2013) (complaint provides adequate notice of each defendant's personal responsibility because the defendants are accused of acting jointly). Generally, "group pleading is permissible so long as it provides notice to each defendant of the contours of the alleged deprivation and that he or she is alleged to have participated in it." *Fulton*, 547 F. Supp. 3d at 810 (citing *Brooks*, 578 F.3d at 581-82). Hernandez's complaint easily satisfies that standard.

Then, each is specifically alleged to have taken statements from suspects and witnesses despite knowledge that the statements were coerced and fabricated. For example, Defendant McGuire is alleged to have taken Hernandez's statement after the Police Officer Defendants had spent many hours engaged in a physically and psychologically coercive interrogation of

Hernandez, and during which they had fed information to Hernandez about the crime. Compl. ¶¶ 31-38, 40. Despite contradictory, false details in Hernandez's statement, McGuire attempted to coerce Hernandez into signing. Compl. ¶ 43-44. This same, unsigned, coerced, false statement was later used to prosecute and convict Hernandez. Compl. ¶ 45.

*Hernandez alleges as clearly as he can reasonably be expected to know what roles the ASA Defendants each played in the coercion and fabrication of the statements and, thereby, in the scheme to unlawfully detain and maliciously prosecute Hernandez.* Hernandez does not merely allege that the ASA Defendants verified his statement. His allegations are not "conclusory". The ASA Defendants were indeed present at Area Five—for many hours—as the Police Officer Defendants coerced and abused the suspects and witnesses. Gecht, Kwil, Hernandez, Colleen Miller – all displayed indicia of falsified, coerced statements. The ASA Defendants instead set about to memorialize the fabricated statements for use in the prosecution.

The ASA Defendants are free to dispute the facts and the inferences at trial. But unquestionably, Plaintiffs' complaints afford them the clear and plain statement of the claims to which Rule 8(a)(2) entitles them. The allegations are sufficient.

## B. Hernandez's Complaint Sufficiently Alleges That the ASA Defendants Violated His Fifth and Fourteenth Amendment Rights.

The ASA Defendants argue that they should be dismissed from Count II because the allegations of their direct involvement in the interrogations of Hernandez is insufficient to establish that they personally engaged in conscience shocking conduct (so as to violate Hernandez's right to substantive due process, protected by the Fourteenth Amendment) or personally took actions that were so coercive as to overbear Hernandez's will (in violation of the Fifth and Fourteenth Amendments).

11

Defendants' argument should be disregarded. The ASA Defendants do not contend that Hernandez's allegations as to the totality of the interrogation process—including the actions of the Police Officer Defendants in combination with those of the ASA Defendants—are insufficient. They appear to concede that point for the purposes of their argument. Instead, they focus on what the complaints say about the ASA Defendants' roles, in particular, ignoring the Police Officers' misconduct, and argue that those allegations in isolation are not enough to show a constitutional violation. But the complaint cannot be analyzed in this fashion.

Hernandez's complaint alleges that the ASA Defendants jointly participated with the Police Officer Defendants in a course of conduct that, in combination, resulted in the violation of Hernandez's rights. The course of the wrongdoing must be evaluated as a whole, not piecemeal. To hold the ASA Defendants (or any particular police officer) personally responsible for violating Hernandez's constitutional rights, "direct participation in the deprivation is not required*." Miller v. Smi*th, 220 F.3d 491, 495 (7th Cir. 2000); *see Childress v. Walker*, 787 F.3d 433, 439-40 (7th Cir. 2015) ("Although … an individual must be personally responsible for a constitutional deprivation in order to be liable, personal responsibility is not limited to those who participate in the offending act").

Hernandez must show (and does) "that the officer (1) participated directly in the alleged violation; (2) knew about the conduct; (3) facilitated the conduct; or (4) approved, condoned, or turned a blind eye to it." *Jakes v. Boudreau*, 2023 WL 3585629, at *9 (N.D. Ill. 2023) (citing *Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017)) (emphasis added). It should be noted that in *Miller*, *Childress*, and *Jakes*, the defendants are police officers, not ASAs. However, this is a distinction without a difference, as the focus on whether a state actor violates someone's Constitutional rights is not on the title, but on the personal involvement and conduct of the state actor.

In other words, even though the ASA Defendants are not alleged to have committed all of the coercive and conscience-shocking behavior of the Police Officer Defendants, they nonetheless "satisf[y] the personal responsibility requirement of § 1983 if [they act or fail to act] with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at [their] direction or with [their] knowledge and consent." *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982); *cf. Carter v. City of Chicago*, No. 17-CV-7241, 2018 WL 1726421, at *5 (N.D. Ill. Apr. 10, 2018) (allegations "that the officers that did not prepare the false reports did nothing to prevent the constitutional violations despite being aware of them" sufficient for personal liability at the pleading stage).

Hernandez alleges the ASA Defendants were co-participants with the Police Officer Defendants in fabricating the various false statements and coercing each consolidated Plaintiff's adoption of the false narrative. Hernandez alleges specific actions the ASA Defendants took in furtherance of the scheme: they waited at Area Five throughout the lengthy process of interrogating each Plaintiff; they observed obvious signs that each Plaintiff had been abused (the lengthy interrogation process itself; each Plaintiff emerging from the police interrogation defeated and with his will overborne; Hernandez and Gecht were actually physically beaten); they then walked each Plaintiff through a confession that the Police Officer Defendants had already extracted; they did not question the obvious falsehoods in each Plaintiff's confession or the inconsistency between the confessions and information known to law enforcement that ruled Plaintiffs out as the perpetrators.

There are sufficient, specific allegations that the ASA Defendants acted "with a deliberate or reckless disregard" of the consolidated Plaintiffs' constitutional rights and the ASA Defendants "knew and consented" to the violations. This is not simply taking the statement of all, or even just one Plaintiff. ASA Defendants were actively involved in much more conduct and with all four

13

witnesses. This is enough to satisfy the "personal responsibility requirement" under the Seventh Circuit cases cited above and to hold the ASA Defendants liable under Count II.

The ASA Defendants' arguments as to the sufficiency of the allegations against them in Count II must be rejected and the motion denied.

### C. Hernandez's Complaint Sufficiently Alleges Fourth and Fourteenth Amendment Claims for Malicious Prosecution and Unlawful Detention.

ASA Defendants seek to dismiss Hernandez's Count III claims for malicious prosecution and unlawful detention under the Fourth and Fourteenth Amendments. They base their argument on the false premise that they had no involvement in or knowledge of coercion and that they honestly believed that there was probable cause to charge Hernandez after speaking with him and the other consolidated Plaintiffs. Without that false premise, this argument fails.

As discussed at length *supra*, Hernandez does not allege minimal, tail-end involvement of the ASA Defendants. Hernandez alleges active participation in investigation, interrogation, and fabrication of evidence. Fabricated and coerced evidence does not count toward probable cause. "Defendants cannot manufacture their own probable cause by fabricating evidence and manipulating witnesses." *Kuri*, 2017 WL 4882338, at *7) (citing *Myett v. Chicago Police Detective Edward Heerdt*, 232 F. Supp. 3d 1005, 1027 (N.D. Ill. 2017)). This is what Hernandez pled. The court must accept the pleadings as true for the purposes of this motion that, absent the fabricated and coerced evidence, there was nothing to support probable cause against Hernandez.

The ASA Defendants acknowledge that *Thompson v. Clark*, 142 S. Ct. 1332, 1337 (2022), "recognized the existence of a Fourth Amendment malicious prosecution claim, overruling contrary Seventh Circuit precedent." Defs' Mot. (ECF No. 52) at 16. Hernandez sufficiently alleges the Fourth Amendment seizure theory that *Thompson* recognized.

The ASA Defendants' only remaining challenge to the sufficiency of Count III is that Hernandez's invocation of the Fourteenth Amendment cannot stand because the Seventh Circuit has found that *Thompson* does not authorize a Fourteenth Amendment due process theory. But the ASA Defendants' Rule 12(b)(6) motion is not the vehicle to pick apart whether one or both of the two amendments provides the vehicle for the claim in Count III. The Seventh Circuit "has repeatedly held that pleaders in a notice system do not have any obligation to plead legal theories." *McDonald v. Household Intern., Inc.*, 425 F.3d 424 (7th Cir. 2005). At the pleading stage Hernandez is not obligated to specify whether his § 1983 malicious prosecution/unlawful detention claim sounds under the Fourth Amendment, the Fourteenth Amendment, or both. Discovery and the finder of fact will be the ultimate arbiter of what legal theories are viable and can proceed.

The Supreme Court indicates there is an established Fourteenth Amendment due process theory in this context. While the Seventh Circuit previously held that the Fourth Amendment is an exclusive avenue for challenging pretrial detention, *Lewis v. Chicago*, 914 F.3d 472, 480 (7th Cir. 2019), the Supreme Court since implied otherwise, assuming that a plaintiff may challenge the legality of pretrial detention under the due process clause, and noting that "[c]ertain wrongs may affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands." *McDonough v. Smith*, 139 S. Ct. 2149, 2155 n.2 (2019).

Hernandez thus alleges both bases for the claims to preserve the issue. This Court should decline to dismiss the Fourteenth Amendment claims at the pleading stage given the unsettled law and because the discovery would overlap regardless of which amendment the claim flows from. *See Winn v. Chicago*, 2022 WL 80272, at *3 (N.D. Ill. Jan. 6, 2022); *Culp v. Flores*, 454 F. Supp. 3d 764 (N.D. Ill. 2020); *Mack v. Chicago*, 2020 WL 7027649, at *3 (N.D. Ill. Nov. 30, 2020); *Wright v. Chicago*, 2021 WL 736234, at *2 (N.D. Ill. Feb. 25, 2021).

There is no basis to dismiss Count III; that claim must stand.

### D. Hernandez Sufficiently Alleges Claims Against the ASA Defendants for Failure to Intervene.

ASA Defendants contend that Hernandez's failure to intervene claims against them cannot survive for two reasons: (1) they had no reason to know of any constitutional violations and (2) they lacked "command authority" over the Police Officer Defendants and therefore "had no duty to intervene in any misconduct on behalf of Officer Defendants." Defs' Mot. at 19. Like their other arguments, these contentions contradict the allegations and do not hold water.

"A state actor can be held liable under Section 1983 for failure to intervene." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994); *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972) ("[O]ne who is given the badge of authority… may not ignore the duty imposed by his person in his presence or within his knowledge."). Prosecutors who step into the investigative role—as Hernandez alleges the ASA Defendants did here—are not entitled to any dispensation from this rule. On the contrary, prosecutors who act as investigators are subject to the same rules that apply to police investigators. *Whitlock v. Brueggemann,* 682 F.3d 567, 580 (7th Cir. 2012).

Thus, most decisions from this district hold that felony review prosecutors acting in an investigatory capacity can be held liable for failing to intervene to stop police misconduct. See *Rivera v. Lake County*, 974 F. Supp. 2d 1179, 1191 (N.D Ill. 2013), *Chatman v. City of Chicago*, 2015 WL 1090965, at *10 (N.D. Ill. Mar. 10, 2015); *Smith v. Burge*, 2016 WL 6948387, at *10 (N.D. Ill. Nov. 28, 2016); *Harris v. City of Chicago*, 2015 WL 5445012, at *4 (N.D. Ill. Sept. 15, 2015); *Saunders v. City of Chicago*, 2013 WL 6009933, *10 (N.D. Ill. 2013); *Fulton*, 547 F. Supp. 3d at 817.

The decisions that ASA Defendants cite either pre-date *Whitlock* or are poorly reasoned. For example, ASA Defendants cite *Patrick v. City of Chicago*, 213 F. Supp. 3d 1033, 1055 (N.D.

Ill. 2016), which held that prosecutors are not subject to a duty to intervene because they lack the practical ability to prevent police wrongdoing at an Area headquarters. The court's reasoning in *Patrick* was flawed and based on allegations different than those set out in the complaints at issue here.

As Hernandez alleges, the ASA Defendants were present at police headquarters for the very purpose of ensuring that police investigations are properly handled and legitimate probable cause existed. It is the height of folly to claim that the police will not stop and listen to a Felony Review ASA that says an officer's course of conduct is mortally endangering a case. After all, where the investigations are not handled in compliance with constitutional requirements, prosecutors can, and must, intervene by declining to approve charges. Moreover, apart from intervening to prevent police misconduct, the individual ASA Defendants had the separate obligation to intervene to halt misconduct by his prosecutor colleague—a person in the same chain of command. *Heidelberg v. Manias*, 503 F.Supp.3d 758, 790 (C.D. Ill. 2020) (holding that law enforcement officers have a duty to intervene against other officers.) So too, should the same be held for a prosecutor (who is an officer of the court and bound to high standards) observing his fellow prosecutor's bad conduct.

ASA Defendants contend they were ignorant of the Police Officer Defendants' misconduct; that they violated no constitutional requirements; and therefore, that neither of the ASA Defendants had reason to intervene. But Hernandez alleges the contrary, and his allegations must be taken as true. The failure to intervene claims against the ASA Defendants should not be dismissed.

## III. QUALIFIED IMMUNITY DOES NOT BAR HERNANDEZ'S CLAIMS AGAINST THE ASA DEFENDANTS.

The ASA Defendants argue that, in the absence of Absolute Immunity, they are entitled to qualified immunity because Hernandez only alleges that they took witness statements: "ASA Defendants merely spoke to witnesses after they made statements to police officers." Defs' Mot.

at 20. Once again, Hernandez alleges much more than ASA Defendants try to claim, asserting that the ASA Defendants actively participated in the fabrication and coercion of statements from Hernandez, the other consolidated Plaintiffs, and Colleen Miller that were used to falsely convict Hernandez of a crime he did not commit.

Prosecutors cannot shield their misfeasance behind qualified immunity when they act as investigators and participate in the fabrication and coercion of statements from witnesses and suspects. *See, e.g., Brown v. City of Chicago,* 633 F. Supp. 3d 1122, 1154 (N.D. Ill. 2022) (rejecting qualified immunity because "it is beyond reasonable dispute that fabricating evidence and conspiring to frame a suspect violates an individual's constitutional rights" and citing *Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008)). Thus, there is no basis for the ASA Defendants' generalized invocation of qualified immunity as a defense to Hernandez's claims as alleged in his complaint.

The ASA Defendants focus their attention on Hernandez's failure to intervene claim, arguing that, as of the 1999 events in this case, prosecutors did not have a clearly established duty to intervene to prevent police misconduct, even when the prosecutors themselves were participants in this misconduct and functioning as co-investigators with the police.

The doctrine of qualified immunity considers whether state actors were on notice that their conduct violates established Constitutional rights. *Armstrong v. Daily*, 786 F.3d 529, 556 (7th Cir. 2015) ("The issue is not whether issues concerning the availability of a remedy are settled. The qualified immunity defense focuses instead on whether the official defendant's conduct violated a clearly established constitutional right."). It cannot be reasonably argued that the ASA Defendants did not violate Hernandez's Constitutional rights when they fabricated false statements after lengthy, illegal interrogations.

18

There can be no immunity from Hernandez's §1983 failure to intervene claims. As alleged, the ASA Defendants' conduct is clearly unconstitutional, Hernandez is not required to provide a case outlining each of the particular legal theories of liability. A state actor who has the opportunity, but fails to step forward to prevent his fellow state actor from violating an individual's constitutional rights, can be held liable for that failure. *Byrd*, 466 F.2d at 11; *Yang*, 37 F.3d at 285. That state actor cannot avail himself of immunity by arguing that he has a different job title from other state actors addressed in previous cases.

The ASA Defendants violated an obvious duty to intervene, even without on-point precedent. *Cf. Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Felony review prosecutors report to the police Area headquarters to ensure that police investigations develop sufficient evidence to merit charging and to ensure that the investigations are conducted in compliance with constitutional requirements. When police violate those requirements, prosecutors are the final line of defense; their duty is to decline charges that would be based on coerced and fabricated evidence. Here, the ASA Defendants are alleged to have abandoned that line of defense and joined the assault on Hernandez's constitutional rights, all in the name of obtaining convictions at any cost.

This court should reject ASA Defendants' qualified immunity defense as to all claims, including the failure to intervene claim.

## IV. HERNANDEZ'S STATE LAW CLAIMS AND INDEMNIFICATION CLAIMS MUST BE ALLOWED TO PROCEED.

The ASA Defendants are not entitled to absolute or qualified immunity, as described above. Since they are not entitled to immunity from being sued in the federal claims against them, there is similarly no immunity from the state law claims for the same conduct, which Hernandez alleges is also a violation of state tort law. *Wharrie*, 740 F.3d at 1115.

Hernandez's claims against the ASA Defendants should not be dismissed at this stage. Because the claims against the ASA Defendants must proceed, Cook County has the obligation to indemnify them in this case. Therefore, the indemnification claims should likewise not be dismissed.

## V. THE ASA DEFENDANTS ARE NOT ENTITLED TO A MORE DEFINITE STATEMENT OF THE CLAIMS AGAINST THEM.

ASA Defendants ask, if their claims are not dismissed, that the Court order a more definite statement. According to the ASA Defendants, a more definite statement is required because Hernandez does not provide notice of what misconduct is attributed to them. This is, again, a deliberate misreading of Hernandez's Complaint. As previously discussed at length, Hernandez alleges in his complaint actions taken by one of three groups: "Police Officer Defendants", "ASA Defendants", and "Defendants" – used when both the Police Officer Defendants and the ASA Defendants are jointly undertaking some course of action. There can be no more definite statement, unless ASA Defendants are asking that Hernandez spend time crafting an unnecessarily long and repetitive complaint that recites the same base allegation against each *individual* defendant.

### A. Hernandez Adequately Puts ASA Defendants on Notice.

The ASA Defendants' argument is, again, misplaced. Given liberal pleading standards, Rule 12(e) motions are granted "only in the rare circumstance where the complaint is so vague or unintelligible that the defendant cannot frame a response." *Brightbill Corp. v. Hellstrom*, 1985 WL 1304, *1 (N.D. Ill. May 7, 1985). "Rule 12(e) motions are disfavored by most courts, and are rarely granted" because of the "availability of the variety of pretrial discovery procedures." *D 56, Inc. v. Berry's, Inc.*, 1996 WL 252557, at *10 (N.D. Ill. May 10, 1996); 5C Wright & Miller, Federal Practice and Procedure § 1376 (3d ed. 2012) (noting that "the class of pleadings that are appropriate subjects for a motion under Rule 12(e) is quite small" and the pleading need only "be

sufficiently intelligible for the district court to be able to make out one or more potentially viable theories on which the claimant might proceed."). It is well-settled that "Rule 12(e) motions should not be treated as a substitute for discovery." *Board of Trustees v. Illinois Range, Inc*., 186 F.R.D. 498, 504 (N.D. Ill. 1999).

In the instant action, discovery should proceed. The ASA Defendants' claim that "the evidence in this case *is* in the hands of the Plaintiff and has been for years" as if there is nothing left to discover. Defs' Mot. at 23. On the contrary, many facts surrounding the ASA Defendants' alleged wrongdoing are solely within the control of the ASA Defendants themselves and the other individual Defendants. *Illinois Range*, 186 F.R.D. at 504 ("[I]n that all of the information . . . is in the hands of . . . Defendants, it cannot be expected that Plaintiff could provide any additional information in its complaint."). As such, Hernandez is entitled to satisfy notice pleading requirements and then distill supporting facts in discovery. *D 56, Inc*., 1996 WL 252557, at *11 (any missing detail was "information which the plaintiff should not be required to know at this point, but rather something that defendants' answer and pre-trial discovery will hopefully reveal"). Relief under Rule 12(e) is not warranted.

The ASA Defendants make the curious argument that they know less than Hernandez because of his lengthy post-conviction proceedings (to which they were not parties). The ASA Defendants cannot possibly know *less* than Hernandez about *their own conduct*. Where possible, the allegations in Hernandez's complaint specifies whether the wrongdoing was committed by the "ASA Defendants" or the "Police Officer Defendants." In some instances, Hernandez alleges that the misconduct is attributable generally to all the individual "Defendants". This is sufficient under Rules 8(a)(2) and 12(e). The reality is that the discussions and planning between the Police Officer Defendants and the ASA Defendants at Area Five concerning their theory of the crime and the

tactics to use to implicate the consolidated Plaintiffs took place outside of the interrogation rooms where Hernandez was confined on the night in question. Thus, it is the ASA Defendants—not Hernandez—who possess superior knowledge.

Hernandez never had an opportunity (as he will in discovery in these cases) to question the individual Defendants regarding these events and others, in which they were direct participants. Discovery will more fully reveal which Defendants did what. The complaint, however, is sufficient under the circumstances.

### B. Hernandez Should Not Be Required to Include "Deliberate Omissions" as Part of a More Definite Statement.

The ASA Defendants seek to force Hernandez to include portions of Gecht and Kwil's complaints that allege police received tips incriminating Hernandez and that Hernandez's statement was court-reported. ASA Defendants go further in implying that Hernandez seeks to conceal this information from the Court.

Hernandez is the master of his complaint. Just as ASA Defendants cannot rewrite a plaintiff's complaint via motion to strike (*Burke v. Larkin Law Firm, PC*, 2007 WL 917380, *2 (S.D. Ill.)), neither can they rewrite his complaint by forcing him to include select, specific allegations they want included.

That a statement may have been court-reported does not carry some talismanic weight that would shield ASA Defendants from responsibility for their actions. A coerced, falsified statement is coerced and falsified regardless of whether it is written in pen, recorded on video, or court-reported. It is borne from physical abuse and torture no matter who took it down.

Nor too can probable cause come from a single, anonymous tip. *Illinois v. Gates*, 462 U.S. 213 (1983) ("standing alone, the anonymous letter sent to the [police] would not provide the basis…that there was probable cause to believe contraband would be found in the Gates' car and

22

home.") The anonymous tip in *Gates* provided much more information than the tip against Hernandez, setting forth travel plans, the location of the drug buy, the street value of the drugs that supposedly were in the basement, who drove the car back, and so forth. *Gates*, 462 U.S. at 225. ASA Defendants may be free to argue they had probable cause to arrest and convict Hernandez, but such arguments are best left for summary judgment or trial.

### C.  Hernandez Should Not be Required to Attach his PC Petition.

ASA Defendants assert that, if Hernandez were forced by this Court to attach his PC Petition to his complaint, merely because the other consolidated Plaintiffs attached PC Petitions to *their* complaints, then "ASA Defendants could address [the PC Petition's contents] in their subsequent motion to dismiss." Defs' Mot. at 29. It is not Hernandez's job to aid Defendants in crafting their attacks upon his allegations. Even if the PC Petition were included along with the other "evidence" ASA Defendants want, such evidence would point in another direction – that the Police Officer Defendants and ASA Defendants conspired together to craft and coerce false confessions supporting the contents of an anonymous tip, rather than verifying the tip through proper, Constitutional practices. However, as already discussed, such arguments are best suited for summary judgment or trial.  *See Vanguard Financial Service Corp. v. R W Professional Leasing Services Corp*., 1998 WL 774984 (N.D. Ill.) (Plaintiff brought a negligent misrepresentation claim against Defendant, who moved to dismiss, in part, on a failure to allege Defendant was in the business of supplying information for the guidance of others – an essential element of the claim. The court held that a decision regarding the issue of whether Defendant was in such a business was better suited for summary judgment rather than a motion to dismiss.)

<u>**CONCLUSION**</u>

For the foregoing reasons, this court should enter an order denying the ASA Defendants' motions to dismiss and their request for a more definite statement.

Respectfully submitted,


Ruben Hernandez,

By
*s/ Thomas G. Gardiner*
Thomas G. Gardiner
Michelle M. LaGrotta
Gardiner, Koch, Weisberg & Wrona
Gardiner Koch Weisberg & Wrona
121 W. Wacker Dr., Suite 3600
Chicago, Illinois 60601
312-362-0000
tgardiner@gkwwlaw.com;
For service and copies: jbox@gkwwlaw.com

*s/ Dan Stohr*
*Counsel for Plaintiff Hernandez*
Dan Stohr
311 N. Aberdeen
Chicago, IL 60607
312-726-1180
Dan@danstohr.com

Attorneys for Plaintiff Ruben Hernandez

April 11, 2024