UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Ruben Hernandez, | |
| *Plaintiff*, | |
| | No. 23 CV 15375 |
| v. | |
| | Judge Lindsay C. Jenkins |
| Reynaldo Guevara, *et al.*, | |
| *Defendants*. | |

MEMORANDUM OPINION AND ORDER

On March 1, 1999, Plaintiff Ruben Hernandez was arrested and interrogated in connection with the murder of Roberto Cruz. He made an incriminating confession, was convicted, and served 24 years in prison before being exonerated and released. Hernandez brings this action under 42 U.S.C. § 1983 against Assistant Cook County State's Attorneys ("ASA"), Cook County, and others. Before the Court is the ASA Defendants' and Cook County's motion to dismiss the complaint in its entirety. For the reasons stated below, the motion is granted in part and denied in part.

I.    **Background**

The Court takes Hernandez's well-pleaded factual allegations as true for purposes of ruling on the motion to dismiss. *See Smith v. First Hosp. Lab'ys, Inc.*, 77 F.4th 603, 607 (7th Cir. 2023). The Court also considers Hernandez's post-conviction petition attached to Defendants' motion as part of the pleadings. "[C]ourts may consider outside exhibits that are central to the plaintiff's claim and referred to in the complaint, even if supplied by the defendants." *Andersen v. Vill. of Glenview*, 821 F. App'x 625, 627–28 (7th Cir. 2020). Hernandez's post-conviction petition is referenced

in the complaint. [Dkt. 1, ¶¶ 86–88.][1] It also contains statements about how Hernandez came to be arrested as a suspect in the case that are probative of probable cause, which is central to his Fourth Amendment claims. [*E.g.*, Dkt. 52-1 at 14–16, ¶¶ 17–22.]

On January 29, 1999, Roberto Cruz was murdered by his car shortly after leaving a nightclub in Chicago, Illinois. [Dkt. 1, ¶ 24–26.] A bouncer gave the police descriptions of two men seen arguing with Cruz at the club. [*Id.* at ¶ 27.] The next day, police received an anonymous tip that Hernandez and another individual, "Benjamin D.," bragged that they'd shot Cruz because he owed Benjamin money. [Dkt. 52-1 at 14–15, ¶ 17.] The tipster also correctly stated that Cruz had been killed by his car shortly after leaving a bar in the area. [*Id.*] This information was shared with Detectives Guevara and Halvorsen, who are also defendants in this case ("Police Defendants"). [*Id.* at 15, ¶ 18.] Cruz's mother confirmed that Hernandez and Benjamin were enemies of Cruz. [*Id.*] The detectives also pulled rap sheets and Central Booking Reports for the two men and discovered that Benjamin matched the description of one of two men the club bouncer identified as arguing with Cruz on the night of his murder. [*Id.*] Hernandez did not match either description. [Dkt. 1, ¶ 28.]

Five weeks later, Defendant Police arrested Hernandez, as well as two other individuals, David Gecht and Richard Kwil, in a 24-hour period in connection with

---

[1]      Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

the Cruz case. [Dkt. 1, ¶ 29.][2] They were taken to the Area Five police station for interrogation.

Hernandez was arrested first on the morning of March 1, 1999. [Dkt. 52-1 at 17, ¶ 27.] Police initially took him to the Fourteenth District to be questioned about another crime. [Dkt. 1, ¶ 30.] Hernandez's attorney arrived and advised him to remain silent, which he did. [*Id.*] After Hernandez's attorney left, police took Hernandez to Area Five to question him about Cruz's murder. [*Id.* at ¶ 31.] Police Defendants questioned Hernandez in a small interrogation room. [*Id.* at ¶ 34.] Hernandez repeatedly denied any involvement and tried to invoke his Fifth Amendment rights but was ignored. [*Id.* at ¶ 39.] Police Defendants presented Hernandez with different versions of the crime and the statement they wanted him to give. [*Id.* at ¶¶ 36–37.] Over several hours, Police Defendants continued to accuse, yell at, threaten, and physically abuse Hernandez by hitting and choking him. [*Id.* at ¶¶ 34–35, 38.] Throughout this process, Police Defendants continued feeding Hernandez versions of how they thought Cruz's murder occurred. [*Id.* at ¶ 37.] Police Defendants then took Hernandez to meet ASA Defendant Brendan McGuire, who brought Hernandez a typed statement confessing to participating in Cruz's murder, along with Gecht and Kwil.[3] [*Id.* at ¶¶ 40–41.] McGuire and Police Defendant Guevara both read the statement to Hernandez and told them they wanted him to

---

[2]    Gecht and Kwil filed separate lawsuits against the same defendants based on the same events. *Gecht v. Guevara*, 23-cv-1742 (N.D. Ill. Mar. 21, 2023); *Kwil v. Guevara*, 23-cv-4279 (N.D. Ill. July 5, 2023).
[3]    Defendant Brendan McGuire was incorrectly captioned as "Brendan Maguire." [Dkt. 52 at i.]

sign it. [*Id.* at ¶ 40.] McGuire walked Hernandez through the statement to have him confirm it. [*Id.* at ¶ 44.] Hernandez refused to sign the statement, but it was nevertheless used in his prosecution. [*Id.* at ¶¶ 44–45.] McGuire was also present at Area Five while the interrogation was ongoing. [*Id.* at ¶ 42.]

Police Defendants also arrested Kwil on March 1, 1999. Hernandez's complaint doesn't present a clear timeline, but Gecht's post-conviction petition states that Kwil was arrested hours after Hernandez, in the evening. [Dkt. 52-1 at 17, ¶ 31.][4] As with Hernandez, Police Defendants interrogated Kwil about Cruz's murder at the Area Five police station. [Dkt. 1, ¶ 52.] Police Defendants attempted to force Kwil to confess to participating in the murder by threatening that he would never see his daughter again if he did not provide a statement. [*Id.*] Over the course of the interrogation, Police Defendants fed Kwil details about the crime and their theory of how it occurred. [*Id.* at ¶ 53.] Kwil eventually relented and gave a signed statement to Prosecutor Defendant Hood, implicating himself, Gecht, and Hernandez in the crime. [*Id.* at ¶ 54.] Hood walked Kwil through this version of events to have him confirm it. [*Id.* at ¶ 58.] Hood was also present at Area Five while the interrogation was ongoing. [*Id.* at ¶ 56.]

Police Defendants arrested Gecht between March 1 and 2, 1999 and took him to Area Five for interrogation about Cruz's murder. [Dkt. 52-1 at 20, ¶ 42.] Gecht experienced a similar interrogation. Police Defendants questioned Gecht, showing him pictures of Cruz, and feeding Gecht details about how they thought the crime

---

[4] Gecht's post-conviction petition is incorporated into Hernandez's post-conviction petition. [Dkt. 52-1 at 2–3, ¶ 8.]

occurred. [*Id.* at ¶ 47; Dkt. 1, ¶ 50.] Throughout this time, Police Defendants physically abused Gecht, including when he denied involvement in the crime and asked for a phone call and attorney. [*Id.* at ¶¶ 47–50.] Gecht was slapped and punched multiple times and left with a cut in his mouth and a chipped tooth. [Dkt. 52-1 at 22–23, ¶ 49.] Police Defendants told Gecht that he could go home if he signed a statement confessing to being involved in the crime. [Dkt. 1, ¶ 49.] Gecht eventually relented; he gave a signed statement to McGuire confessing to shooting Cruz with Kwil and Hernandez assisting. [*Id.* at ¶¶ 49, 51.] McGuire walked Gecht through Police Defendants' version of events and had Gecht confirm them. [*Id.* at ¶ 58.] McGuire was also present at Area Five while the interrogation was ongoing. [*Id.* at ¶ 56.]

Police Defendants also allegedly arrested and interrogated Colleen Miller, Gecht's girlfriend, at Area Five. [*Id.* at ¶ 61.] They threatened to charge her as well if she did not cooperate and provide a statement. [*Id.* at ¶ 64.] Miller provided a statement to McGuire implicating Hernandez. [*Id.* at ¶ 68–69; Dkt. 52-1 at 25, ¶ 59.]

Hernandez, Kwil, and Gecht's statements were used to convict Hernandez of Cruz's murder, and Miller's to further his prosecution. [Dkt. 1, ¶¶ 45, 59, 70.] In July 2023, Hernandez's conviction was vacated, and the State entered a *nolle prosequi*, dismissing all charges against him. [*Id.* at ¶¶ 86–88.]

Hernandez filed this lawsuit pursuant to 42 U.S.C. § 1983 raising three federal and three state law claims against Hood and McGuire: coercing a false confession in violation of the Fifth and Fourteenth Amendments (Count II); malicious prosecution

and unlawful detention in violation of the Fourth and Fourteenth Amendments (Count III); failure to intervene (Count IV); malicious prosecution (Count VII); intentional infliction of emotional distress (Count VIII); and willful and wanton conduct (Count IX). [Dkt. 1, ¶¶ 140–60, 181–93.] He also brings an indemnification claim against Cook County based on ASA Defendants' liability (Count XII). [*Id.* at ¶¶ 203–08.]

## II. Legal Standard

At the motion to dismiss stage, the Court takes well-pleaded factual allegations as true and draws reasonable inferences in favor of the plaintiff. *Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023); *Reardon v. Danley*, 74 F.4th 825, 826-27 (7th Cir. 2023). "To survive a motion to dismiss under Rule 12(b)(6), plaintiff's complaint must allege facts which, when taken as true, plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (cleaned up). This occurs when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Garrard v. Rust-Oleum Corp.*, 575 F. Supp. 3d 995, 999 (N.D. Ill. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted)).

"Ordinarily, when adjudicating a motion to dismiss under Rule 12(b)(6), a district court is limited to the allegations of the complaint." *Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022). If the Court considers "matters outside the pleadings," the "motion must be treated as one for summary judgment." Fed. R. Civ. P. 12(d). However, "there is an exception under which a court may consider

documents that are (1) referenced in the plaintiff's complaint, (2) concededly authentic, and (3) central to the plaintiff's claim" without converting the motion to dismiss into a motion for summary judgment. *Fin. Fiduciaries*, 46 F.4th at 663. The purpose of this "incorporation-by-reference doctrine" is to "prevent[ ] a plaintiff from 'evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit.'" *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (quoting *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)).

## III.    Analysis

Hood and McGuire move to dismiss the complaint on several grounds, including absolute immunity, qualified immunity, improper group pleading, and failure to state a claim. The Court addresses each argument in turn.

### A.    Absolute Immunity

Hood and McGuire argue that they are entitled to absolute immunity on all section 1983 claims against them. [Dkt. 52 at 5–9.] It is well-established that a prosecutor is absolutely immune from section 1983 liability when he or she "acts as an advocate for the State." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). The purpose of prosecutorial immunity is to protect a prosecutor's independence and ability to work unhampered by the threat of baseless litigation sprung from a defendant's "resentment at being prosecuted." *Imbler v. Pachtman*, 424 U.S. 409, 423–25 (1976). Prosecutorial immunity "shields prosecutors even if they act maliciously, unreasonably, without probable cause, or even on the basis of false

testimony or evidence." *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003) (cleaned up).

But a prosecutor is only absolutely immune for acts that are "quasi-judicial" in nature. *Greenpoint Tactical Income Fund v. Pettigrew*, 38 F.4th 555, 565 (7th Cir. 2022). Courts apply a functional test to determine whether absolute immunity applies to a particular claim. *Buckley*, 509 U.S. at 269. The key question is "whether the prosecutor was acting as an advocate in the challenged actions or was instead acting in some other capacity, such as investigator or administrator." *Pettigrew*, 38 F.4th at 565. A prosecutor's advocacy role refers to "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial." *Buckley*, 509 U.S. at 273. By contrast, a prosecutor acts as an investigator when they fill the role of a detective or officer "searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested." *Id.* at 273. The prosecutor seeking absolute immunity bears the burden of establishing that their conduct was prosecutorial. *Id.* at 269.

Ample caselaw provides guidance on differentiating prosecutorial and investigative conduct. Some actions are clear-cut. For instance, a prosecutor's actions before a court are generally prosecutorial. *See, e.g.*, *Tobey v. Chibucos*, 890 F.3d 634, 649 (7th Cir. 2018) (filing a motion); *Bianchi v. McQueen*, 818 F.3d 309, 318 (7th Cir. 2016) (speaking to a grand jury); *Logan v. Laterzo*, 24 F. App'x 579, 581 (7th Cir. 2001) (making representations in court about potential evidence). Charging decisions are also prosecutorial. *Brunson v. Murray*, 843 F.3d 698, 704–05 (7th Cir. 2016)

8

(preparation of formal charges); *Anderson v. Simon*, 217 F.3d 472, 475–76 (7th Cir. 2000) (refusal to file charges).

Actions taken outside the courthouse are murkier. "[P]reparation for the initiation of judicial proceedings or for trial," falls into the prosecutorial bucket. *Buckley*, 509 U.S. at 273. This includes "professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." *Id.* It encompasses a prosecutor's "effort to control the presentation" of a witness's testimony. *Id.* at 272–73. It also includes taking a court reported statement. *Andrews v. Burge*, 660 F. Supp. 2d 868, 878 (N.D. Ill. 2009). But a prosecutor is not absolutely immune for acts that "go beyond the strictly prosecutorial to include investigation." *Bianchi*, 818 F.3d at 318 (quoting *Buckley*, 509 U.S. at 275–76); *see, e.g.*, *Buckley*, 509 U.S. at 273–76 (prosecutor's endeavors to determine whether boot print at scene of crime had been left by suspect were investigatory).

Probable cause is important but not dispositive. Prior to the existence of probable cause, a prosecutor's actions are investigative. *Buckley*, 509 U.S. at 274. Afterwards, a prosecutor's action might be entitled to absolute immunity, but it still depends on whether the conduct in question was prosecutorial in nature. *Id.* at 274 n.5.

Hood and McGuire argue that they are only alleged to have taken Hernandez, Gecht, Kwil, and Miller's statements after each interrogation, and immediately before making a charging decision. [Dkt. 52 at 6.] This, they say, amounts to

9

reviewing and memorializing evidence already obtained by police, which is well within the scope of their prosecutorial duties. [*Id.* at 9.]

Hernandez paints a different picture. He points to allegations that the ASA Defendants were present at Area Five during the interrogations in which "combined Plaintiffs" were coerced and physically abused. [*Id.* at 5–6.] Hernandez argues that on these allegations, it is reasonable to infer that the Hood and McGuire heard the interrogations and observed signs of physical abuse. In taking statements, they thus participated in coercing and fabricating the confessions, which defeats absolute immunity regardless of probable cause. [Dkt. 60 at 4–6.]

Taking Hernandez's factual allegations as true and drawing reasonable inferences in his favor, the complaint illustrates McGuire acting as an investigator in his interactions with Hernandez. It alleges that, after the interrogation, McGuire met Hernandez with a pre-typed statement, that he and Police Defendant Guevara both read the statement to Hernandez, and McGuire tried to "get [Hernandez] to sign" it. [Dkt. 1, ¶¶ 40, 44.] Pushing a suspect to sign a pre-written statement together with a detective is a far cry from verifying a confession before making a charging decision. Instead, it is inferable that McGuire was involved in fabricating Hernandez's statement. *See infra* Part III.D.1. This negates probable cause and places McGuire's conduct outside the scope of prosecutorial duties, defeating absolute immunity. *Kuri v. City of Chi.*, 2017 WL 4882338, at * 7 (N.D. Ill. Oct. 30, 2017) ("Defendants cannot manufacture . . . probable cause by fabricating evidence."). The Court notes that the allegations lack specifics—if McGuire did not participate in drafting the statement

and did not know it was false, he might be entitled to absolute immunity at summary judgment.

By contrast, Hernandez's allegations as to Hood are vague, but don't cast him as anything but a prosecutor. As Hood points out, he is only alleged to have been at Area Five and taken Kwil's statement, which is a prosecutorial function. [Dkt. 52 at 6.] *Andrews*, 660 F. Supp. 2d at 878 ("It is within the proper role of an advocate for the State to take a court reported statement . . . and hear the defendant give the statement, rather than simply take the word of the police that the defendant has confessed."). For similar reasons discussed below, Hernandez has not pled any Fourth or Fifth Amendment claims against Hood, *infra* Part III.D. At this early stage, the Court declines to dismiss on the grounds of absolute immunity because it is a fact dependent inquiry, and plaintiffs are not required to plead allegations that will defeat immunity. *Jacobs v. City of Chi.*, 215 F.3d 758, n.3 (7th Cir. 2000) (qualified immunity context); *id.* at 775 (Easterbrook, J., concurring) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal."). Instead, the Court dismisses the federal claims against Hood for reasons discussed in the remainder of this opinion.

## B.    Qualified Immunity

Hood and McGuire alternatively argue that all their alleged actions are entitled to qualified immunity. The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Siler v. City of Kenosha*, 957 F.3d 751, 758 (7th Cir. 2020).

This inquiry asks (1) "whether the plaintiff's allegations make out a deprivation of a constitutional right" and (2) "whether the right was clearly established at the time of defendant's alleged misconduct." *Taylor v. City of Milford*, 10 F.4th 800, 806 (7th Cir. 2021). The Court may consider these issues in either order. *Tousis v. Billiot*, 84 F.4th 692, 697 (7th Cir. 2023).

Claims are generally not dismissed under Rule 12(b)(6) on qualified immunity grounds because qualified immunity depends on the facts of the case, and plaintiffs are "not required initially to plead factual allegations that anticipate and overcome" an affirmative defense. *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (quoting *Jacobs*, 215 F.3d at 765 n.3). However, resolution at this stage is appropriate when qualified immunity turns on the second prong—whether the constitutional right at issue was clearly established at the time it was allegedly violated—because it is purely a legal question. *Jacobs*, 215 F.3d at 765 n.3.

Hood and McGuire first argue that their actions are broadly entitled to qualified immunity because Hernandez has not alleged facts showing the prosecutors were aware that any confession at issue was coerced. [Dkt. 52 at 20.] But the arguments for dismissal are fact dependent and dismissal on qualified immunity grounds would be premature. *Litscher*, 267 F.3d at 651; *Jacobs*, 215 F.3d 758, n.3 ("in many cases, the existence of qualified immunity will depend on the particular facts of a given case.").

By contrast, qualified immunity as to the failure to intervene claim (Count IV) can be resolved now as a question of law. Hernandez alleges that Hood and McGuire

failed to stop Police Defendants from violating his constitutional rights despite having an opportunity to do so. [Dkt. 1, ¶¶ 155–60.] Hood and McGuire counter that there was no clearly established duty for prosecutors to intervene when their alleged misconduct occurred in 1999. [Dkt. 52 at 20–21.]

"To be clearly established, the right must be 'sufficiently clear that every reasonable official would understand that what he is doing violates that right.'" *Schimandle v. Dekalb Cnty. Sheriff's Off.*, No. 23-2151, 2024 WL 3964260, at *4 (7th Cir. Aug. 28, 2024) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). Plaintiffs must show that precedent "placed the statutory or constitutional question beyond debate" or that the "conduct is so egregious and unreasonable that . . . no reasonable officer could have thought he was acting lawfully." *Id.*; *see also Hope v. Pelzer*, 536 U.S. 730 (2002). Notice is key; precedent need not be identical, but it should be "closely analogous," such that the "state of the law" at the time of an incident provided "fair warning" to the defendants "that their alleged [conduct] was unconstitutional." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Pelzer*, 536 U.S. at 739).

Hernandez cites two pre-1999 cases recognizing a duty intervene: *Byrd v. Brishke*, 466 F.2d 6 (1972) and *Yang v. Hardin*, 37 F.3d 282 (1994). [Dkt. 60 at 16.] *Byrd* and *Yang* are not closely analogous to Hernandez's circumstance because they only acknowledge a duty to intervene for law enforcement officers—there is nothing to suggest that these cases would have put prosecutors on notice of a similar duty to intervene. The very evolution of the duty to intervene belies this notion.

13

*Byrd* is the "seminal case . . . on the duty of an officer to intervene," *Yang*, 37 F.3d at 285 (emphasis added). Since then, the duty of law enforcement officers to intervene has been widespread in the Seventh Circuit. *See, e.g., id.* (law enforcement officers can be liable under section 1983 if they fail to intervene to prevent other officers from infringing on citizens' constitutional rights); *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) (same); *Lewis v. Downey*, 581 F.3d 467, 473 (7th Cir. 2009) (same). By contrast, courts in this district grappled with whether there was such a duty for prosecutors and repeatedly rejected it. *See, e.g., Gordon v. Devine*, 2008 WL 4594354 at *17 (N.D. Ill. October 14, 2008); *Andrews*, 660 F.Supp.2d at 876 n.6; *Hobbs v. Cappelluti*, 899 F. Supp. 2d 738, 773 (N.D. Ill. 2012).

The tide only turned in 2012 when the Seventh Circuit held (outside of the failure to intervene context) that "prosecutors and police are subject to the same duties when acting in an investigatory capacity." *Whitlock v. Brueggemann*, 682 F.3d 567, 583 (7th Cir. 2012). District courts have interpreted *Whitlock* to impose a duty to intervene on prosecutors as well as police officers. *See, e.g., Saunders v. City of Chi.*, 2013 WL 6009933, at *10 (N.D. Ill. Nov. 13, 2013) (extending failure to intervene liability to prosecutors due to *Whitlock*); *Wilson v. Burge*, 667 F.Supp.3d 785, 851 (N.D. Ill. 2023) (collecting cases). But these recent decisions only prove the point: such a right was nonexistent in 1999.

Hernandez alternatively cites *Hope*, which held that "officials can still be on notice that their conduct violates clearly established law even in novel factual circumstances" where no precedent exists. *Hope*, 536 U.S. at 741. *Hope* is reserved

14

for "rare cases" where the conduct is "so egregious" that it is a "patently obvious" violation. *Leiser v. Kloth*, 933 F.3d 696, 702, 704 (7th Cir. 2019). Hernandez briefly posits that the violation was clear because prosecutors have a duty to ensure that investigations are constitutionally compliant. [Dkt. 60 at 19.] But he has not explained why Hood or McGuire's alleged conduct was particularly egregious such that it provides unmistakable notice or shown how it fits into the narrow line of *Hope* cases. Instead, he merely presumes notice, which is precisely what *Hope's* narrow scope guards against.

Hernandez had a burden to show a right clearly established in 1999. He failed to meet it. Consequently, Hood and McGuire are entitled to qualified immunity on Count IV.

### C.    Group Pleading

Next, Hood and McGuire argue that the remaining section 1983 claims are deficient because the complaint uses improper "group pleading" by referring to "Defendants" broadly throughout the complaint instead of specifying which allegations apply to Hood and McGuire as opposed to Police Defendants. [Dkt. 52 at 10–14.] Consequently, Hood and McGuire lack adequate notice as to how they are alleged to have been personally involved in violating Hernandez's constitutional rights. [*Id*. at 14.]

It is well established that section 1983 lawsuits against individuals "require personal involvement in the constitutional deprivation to support a viable claim." *Gonzales v. McHenry Cnty., Ill.*, 40 F.4th 824, 828 (7th Cir. 2022); *see also Johnson v.*

15

*Rimmer*, 936 F.3d 695, 710 (7th Cir. 2019). "To establish personal liability, the plaintiff must show that the relevant official 'caused the constitutional deprivation at issue' or 'acquiesced in some demonstrable way in the alleged constitutional violation.'" *Gonzalez*, 40 F.4th at 828 (quoting *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003)). Despite the personal involvement requirement, "[g]roup pleading, while not ideal, is not categorically impermissible" for a section 1983 claim. *Fulton v. Bartik*, 547 F. Supp. 3d 799, 810 (N.D. Ill. 2021); *see also Dukes v. Washburn*, 600 F. Supp. 3d 885, 898 (N.D. Ill. 2022). The Seventh Circuit has allowed group pleading where, "reading the allegations sensibly and as a whole, there is no genuine uncertainty regarding who is responsible for what." *Engel v. Buchan*, 710 F.3d 698, 710 (7th Cir. 2013).

The complaint satisfies this minimal standard. It separates defendants into two groups: "Prosecutor Defendants," consisting of Assistant Cook County State's Attorneys Hood and McGuire, and "Police Defendants," consisting of Chicago Police officers named as defendants, and largely adheres to this bifurcated terminology throughout. [Dkt. 1, ¶¶ 16, 20.] Although Hood and McGuire identify over 40 paragraphs that use the collective term "Defendants," context makes clear which defendants are referenced at any given point.

One portion of these paragraphs consists of factual allegations. [Dkt. 1, ¶¶ 2, 3, 5, 11–12, 19, 21, 44, 47, 54, 58–59, 61, 69–70, 72, 76-77, 80, 84, 92–94, 106–107, 117, 133, 143–145, 147, 151, 153, 157, 159, 166, 183, 186, 189, 192–193, 197, 199.] In some cases, the paragraph first references a subgroup of defendants and thereafter

refers to "Defendants" generally. Read in context, these collective references are unambiguous in whether they refer to Police or Prosecutor Defendants. [*E.g.*, *id.* at ¶¶ 19, 61, 91.] Similarly, references to "Defendants" related to the City of Chicago, [*E.g.*, *id.* at ¶¶ 91–94, 106–07, 117], logically refer to Police Defendants since the complaint defines Police Defendants as agents and employees of the City of Chicago and Prosecutor Defendants as agents and employees of Cook County. [*Id.* at ¶¶ 21–21, 205, 207.] Other allegations describe "Defendants" as having participated in violent and psychological coercion and fabricating Hernandez, Gecht, Kwil, and Miller's false confessions. [*Id.* at ¶¶ 2, 59.] But elsewhere, the complaints make the same claims specifically about Hood and McGuire. [*Id.* at ¶¶ 142–44.] Overall, it is clear what specific actions Hood and McGuire are alleged to have taken, such as being present at Area Five during the interrogations and walking suspects and witnesses through their statements. *Iqbal*, 556 U.S. at 680–81. [*Id.* at ¶¶ 42, 44, 56, 58.]

Hood and McGuire also point to paragraphs that assert claims using the collective term "Defendants." [*Id.* at ¶¶ 143–145, 147, 151, 153, 157, 159, 166, 183, 186, 189, 192–193, 197, 199.] Here too, each count begins by identifying the specific defendant group it is brought against.[5] More general references to "Defendants" thereafter logically refer to the defendants against whom the specific claim is made.

Reading each complaint as a whole, "there is no genuine uncertainty regarding who is responsible for what." *Engel*, 710 F.3d at 710.

---

[5] For example, Count VIII refers to both Police and Prosecutor Defendants while Count I only refers to Police Defendants. [Dkt. 1, ¶¶ 129, 188.] References to "these Defendants" later in each count clearly refer to the subgroup initially identified.

### D.     Rule 12(b)(6) Motion

To survive a motion to dismiss for failure to state a claim, Fed. R. Civ. P. 12(b)(6), a complaint must include sufficient factual allegations to show a plausible right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, the facts in the complaint must present a claim that rises "above the speculative level." *Id.* at 545. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" cannot by themselves satisfy Rule 8's requirement that the complaint show the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *see also Iqbal*, 556 U.S. at 678.

### 1.     Count II: Coerced & False Confession

Hernandez brings a coerced and false confession claim under the Fifth and Fourteenth Amendments. He also asserts a fabrication of evidence claim under the Fourteenth Amendment.

The Fifth Amendment, made applicable to the states by the Fourteenth Amendment, prohibits the use of "involuntary" or coerced confessions in criminal cases. *Chavez v. Martinez*, 538 U.S. 760, 770–71 (2003); *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1023–24 (7th Cir. 2006). To bring a Fifth Amendment claim, Hernandez must show (1) that his confession was involuntary and coerced, and (2) that his confession was used against him in a criminal case. *Chavez*, 538 U.S. at 770–71. Fourteenth Amendment claims require a showing of evidence obtained through "conscience-shocking" conduct, regardless of whether the evidence is used at trial. *Id.* at 774. A fabricated evidence claim requires (1) the defendant knowingly fabricated evidence against the plaintiff, (2) the evidence was used at his criminal

trial, (3) the evidence was material, and (4) the plaintiff was damaged as a result. *Patrick v. City of Chi.*, 974 F.3d 824, 835 (7th Cir. 2020).

For Hood and McGuire to be liable under section 1983, Hernandez must show that the prosecutors were "personally responsible" for deprivation of their constitutional rights. *Childress v. Walker*, 787 F.3d 433, 439–40 (7th Cir. 2015). Personal responsibility is established for one who, "having a duty under the Constitution to the plaintiff, act[s] or fail[s] to act with a deliberate or reckless disregard of plaintiff's constitutional rights. . . or the conduct causing the constitutional deprivation occurs at her direction or with her knowledge or consent." *Id.* at 440 (citations omitted) (quotations omitted).

Hernandez alleges that Hood and McGuire "acting as investigators and without probable cause . . . forced [him] to make false [incriminating] statements involuntarily and against his will…which were used against him in criminal proceedings." [Dkt. 1, ¶ 141.] Although he does not claim that Hood and McGuire directly engaged in all the coercive behavior of Police Defendants, he claims to allege facts showing that the prosecutors knowingly and willingly participated in a "course of conduct" that deprived Hernandez of his constitutional rights. [Dkt. 60 at 12–13.] Hood and McGuire protest that none of those allegations show that they coerced or fabricated any confession or knew any confession was coerced or false. [Dkt. 62 at 14–15.]

As an initial matter, Hernandez has improperly lumped both ASA Defendants together in his coerced confession claim. Hernandez alleges that only one ASA

19

Defendant took his statement and otherwise interacted with him—ASA McGuire. ASA Hood, on the other hand, allegedly violated Hernandez's due process rights by coercing a false confession from his co-defendant, Kwil, that was used against Hernandez in a criminal proceeding.

It is well-established in the Seventh Circuit that "where a plaintiff attempts to assert a due process claim based upon allegations that [officials] coerced statements from co-defendants . . . he or she does not state a due process claim, but rather, a malicious prosecution claim." *Taylor v. City of Chi.*, 80 F. Supp. 3d 817, 826–27 (N.D. Ill. 2015) (citing *Petty v. City of Chi.*, 754 F.3d 416, 422–23 (7th Cir. 2014)). As the Seventh Circuit has explained, "[c]oercing witnesses to speak . . . is a genuine constitutional wrong, but the persons aggrieved [are the witnesses] rather than [the arrestee]" and "[r]ights personal to their holders may not be enforced by third parties." *Buckley v. Fitzsimmons*, 20 F.3d 789, 794–95 (7th Cir. 1994). Here, Hernandez is not the rightful "owner" of a Fifth Amendment coerced confession claim against Hood—the person whose confession he allegedly coerced is. Consequently, the Court dismisses without prejudice Hernandez's coerced confession claim against Hood.[6] His fabricated evidence and malicious prosecution claims are cognizable against both ASA Defendants if properly alleged.

The Court next addresses Hernandez's coerced confession claim against McGuire, and his fabricated evidence claims against both ASA Defendants. In

---

[6]    The parties did not raise this issue in briefing, but the Court exercises its discretion to address an unpreserved prudential standing question *sua sponte*. *RK Co. v. See*, 622 F.3d 846, 851 (7th Cir. 2010).

response to the motion, Hernandez points to the following allegations: (1) Hood and McGuire were present at Area Five while Hernandez, Kwil, Gecht, and Miller were interrogated [Dkt. 1, ¶¶ 42, 56]; (2) during the interrogations, Police Defendants physically abused Gecht and Hernandez [*Id.* at ¶¶ 38, 49]; (3) during the interrogation, Police Defendants threatened Kwil and Miller if they did not sign a statement [*Id.* at ¶ 52, 64]; (4) after Hernandez's interrogation, McGuire and Police Defendant Guevara read and gave him a typed statement implicating him, Gecht, and Kwil in Cruz's murder [*Id.* at ¶¶ 40–41]; (5) after Gecht, Kwil, and Millers' interrogations, Hood and McGuire took their statements, which largely consisted of them "walking [each of them] through Defendants' version of events to have them confirm" it [*Id.* at ¶¶ 58, 69]; (6) Hood and McGuire "ignored indicators" that Hernandez, Gecht, Kwil, and Miller's statements were "obviously false" [*Id.*]; and (7) Hernandez, Gecht, Kwil, and Miller's statements were used to corroborate or prosecute or Hernandez. [*Id.* at ¶¶ 45, 59, 70.]

Hood and McGuire argue that Hernandez has not shown coercion or fabrication because they're only alleged to have been present at Area Five and taken Hernandez, Gecht, Kwil, and Miller's statements after each interrogation. [Dkt. 52 at 6.] They argue that it is not reasonable to infer from these few facts that they knew about, much less participated, in coercion or fabrication.

The Court agrees that these allegations alone would be insufficient to plead coercion or fabrication. But there is more. Hernandez also alleged that McGuire met him with a pre-typed confession that he and Police Defendant Guevara read and gave

to Hernandez to sign. [Dkt. 1, ¶¶ 40, 44.] Viewing the allegations in Hernandez's favor, it is reasonable to infer that McGuire was involved in the creation of the false statement because he had it in hand before talking to Hernandez. That he also presented it in conjunction with Police Defendant Guevara indicates that he was not there to impartially review and record the accuracy of Hernandez's confession, but to make sure he provided it. On these allegations, a reasonable jury could infer that McGuire helped fabricate and coerce Hernandez's statement.

There are, however, no similar allegations about Hood. Hernandez claims that Hood helped fabricate Kwil's confession, which implicated Hernandez. But there are no allegations showing that Hood fabricated Kwil's statement or knew that it was false. First, even if knowing Kwil was coerced might signal a false confession, mere presence at Area Five is insufficient to show awareness of coercion. *Andrews*, 660 F. Supp. 2d at 877 (presence at police station insufficient to show knowledge of coercion). There are no factual allegations that Hood participated in the interrogation, or allegations explaining how Hood would have known Kwil was being interrogated, much less coerced.

Once Hood was face to face with Kwil, knowledge of coercion would be inferable if there were apparent signs. *See, e.g.*, *Abrego v. Guevara*, No. 23-cv-1740, 2024 WL 3566679, at *4 (N.D. Ill. July 29, 2024) (plaintiff's "body was marred by bruises" and his "underwear was soiled"); *Orange v. Burge*, No. 04 C 0168, 2008 WL 4443280, at *11 (N.D. Ill. Sept. 29, 2008) (plaintiff told prosecutor about his mistreatment by police). But the allegations here fall short. Hernandez does not allege that Kwil was

physically abused at all or that Kwil told Hood about mistreatment during the interrogation. Without more, it is not plausible to infer that Hood knew Kwil had been coerced or that his statement was false.

Finally, Hood's alleged behavior while taking Kwil's statement only describes fabrication in a conclusory fashion. "[W]alking" a suspect through their statement to "have them confirm" it is abstract and does not bespeak fabrication without more. It is not the same as handing a suspect a pre-typed statement, coaching a suspect, or feeding them details to include in their statement. *Cf. Hill v. Coppleson*, 627 F.3d 601, 603–04 (7th Cir. 2010) (prosecutor alleged to have fed plaintiff details about murder he later confessed to); *Orange*, 2008 WL 4443280, at *10 (prosecutor alleged to have coached plaintiff on false confession). Hood also allegedly ignored signs that the statement was false, but there are no factual allegations showing how he would have known this.

In sum, Hernandez has stated coerced confession and fabricated evidence claims against McGuire. His fabricated evidence claim against Hood falls short and is dismissed without prejudice.

### 2. Count III: Malicious Prosecution & Unlawful Detention

Count III asserts malicious prosecution and unlawful detention claims under the Fourth and Fourteenth Amendments.

For a Fourth Amendment malicious prosecution claim, a plaintiff must allege that: (1) the prosecution was instituted without any probable cause; (2) the motive in instituting the prosecution was "malicious"; and (3) a favorable termination of the

underlying criminal prosecution. *Thompson v. Clark*, 142 U.S. 36, 44 (2022). "Malicious" is defined as "without probable cause." *Id.*

The elements of an unlawful detention claim are similar: the defendant "(1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Bahena v. Kennedy*, No. 17 CV 8532, 2021 WL 8153974, at * 6 (N.D. Ill. Oct. 25, 2021) (collecting cases); *see also Manuel v. City of Joliet*, 580 U.S. 357, 364–65 (2017) (unlawful pretrial detention requires a seizure without probable cause).

Hernandez has pled all elements as to Defendant McGuire on both claims. On probable cause, McGuire argues that the complaint, supplemented by additional facts in Gecht's post-conviction petition, shows that there was probable cause to arrest Hernandez. He emphasizes the anonymous tip police received about Hernandez being involved in Cruz's murder, [Dkt. 52 at 24–25.], that Hernandez confessed to the police before meeting with McGuire, [Id. at 7], and that he gave a court-reported statement to police. [*Id.* at 24–25.]

However, as McGuire argues, "falsifying the factual basis for . . . probable-cause [ ] violates the Fourth Amendment." *Lewis v. City of Chi.*, 914 F.3d 472, 477 (7th Cir. 2019). According to Hernandez's allegations, McGuire was involved in or knew that his confession was coerced or fabricated, as shown by the allegation that he brought and reviewed with Police Defendant Guevara a pre-typed statement and tried to get Hernandez to sign it. *See supra*, Part III.D.1. There is also no allegation that McGuire was aware of the tip implicating Hernandez. Because McGuire is

alleged to have helped fabricate and/or was aware the confession was coerced and false, the Court cannot conclude that probable cause existed, particularly when such a factual determination is more appropriate at a later stage. *See Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993) (probable cause assessment within the province of a jury); *Wilson*, 667 F. Supp. 3d at 873 (same) (citing *Maxwell*).

Hernandez has also pled malice, as "malice can be inferred when a defendant lacks probable cause and the circumstances indicate a lack of good faith." *Holland v. City of Chi.*, 643 F.3d 248, 255 (7th Cir. 2011).

Finally, the parties do not dispute that Hernandez was exonerated in 2023, and the State dropped all charges. [Dkt. 1, ¶¶ 86–88.] Consequently, Hernandez has stated claims for malicious prosecution and unlawful detention against McGuire.

Conversely, given that Hernandez has not alleged sufficient facts to show that Hood fabricated any statement used against him, or was aware any such statement was false, *supra* Part III.D.1, it is not reasonable to infer a lack of probable cause to charge him. *Cf. Wilson*, 667 F. Supp. 3d at 873 (absence of probable cause alleged where defendants alleged to have known plaintiff's confession was coerced). Thus, the Court dismisses Hernandez's Fourth Amendment claims against Hood with leave to amend.

Count III also brings a malicious prosecution claim under the Fourteenth Amendment. Hood and McGuire argue that this claim is improper because Hernandez also brings a malicious prosecution claim under Illinois law. [Dkt. 52 at 16–17.] Generally, a plaintiff "cannot invoke the substantive due process clause

where state laws provide an adequate postdeprivation remedy for the complained-of conduct." *Fox v. Hayes*, 600 F.3d 819, 841 (7th Cir. 2010). Accordingly, the Seventh Circuit has rejected federal malicious prosecution claims because Illinois law recognizes tort claims for malicious prosecution. *See e.g., id.*; *Ray v. City of Chi.*, 629 F.3d 660, 664 (7th Cir. 2011).

Hernandez argues that this Court should chart a new course because the Supreme Court has "implied" that the Fourteenth Amendment can support a malicious prosecution claim. [Dkt. 60 at 15 (citing *McDonough v. Smith*, 588 U.S. 109, 115 n.2 (2019)).] The Court declines to do so. *McDonough* did not approve such a claim and *Thompson*, which post-dates *McDonough*, declined to consider it. *Thompson*, 596 U.S. at 43 n.2. Although it might be described as an "open question," it is "likely preclude[d]" by the availability of a state remedy. *Jones v. York*, 34 F.4th 550, 564 n.8 (7th Cir. 2022).

Count III also cites the Fourteenth Amendment as a basis for the unlawful detention claim. Such a claim only sounds in the Fourth Amendment. "*Manuel I* makes clear that the Fourth Amendment, not the Due Process Clause, governs a claim for wrongful pretrial detention." *Lewis*, 914 F.3d at 475 (citing *Manuel*, 580 U.S. at 365–69); *see also Patrick*, 974 F.3d at 834.

In sum, Hernandez has pled malicious prosecution and unlawful detention claims against McGuire. The Court dismisses his Fourth Amendment claims against Hood without prejudice and dismisses his Fourteenth Amendment claims against Hood and McGuire with prejudice.

26

## IV.    Conclusion

For the reasons stated herein, Hood and McGuire's motion to dismiss is granted in part and denied in part. As to Defendant Hood, Plaintiff's Fifth and Fourteenth Amendment (Count II), and Fourth Amendment claims (Count III) are dismissed without prejudice. His failure to intervene (Count IV) and remaining Fourteenth Amendment claims (Count III) are dismissed with prejudice. As to Defendant McGuire, Plaintiff's failure to intervene (Count IV) and Fourteenth Amendment claims (Count III) are dismissed with prejudice.

At this point, the only remaining federal claims are those against McGuire. The state law claims against Hood—malicious prosecution, intentional infliction of emotional distress, and willful and wanton conduct (Counts VII–IX)—derive from a common nucleus of operative facts as those claims, so the Court will retain jurisdiction over them. *See Ammerman v. Sween*, 54 F.3d 423 (7th Cir. 1995) (affirming retention of supplemental jurisdiction over state law claims against employee defendant due to common nucleus of operative facts with remaining federal claims against employer defendant).

The Court's normal practice, in accordance with Seventh Circuit guidance, is to give one chance to amend after a motion to dismiss is briefed, even if a plaintiff has amended previously. *Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022). And Seventh Circuit precedent is clear that the Court should err on the side of allowing an amendment; "a court should deny leave to amend only if it is certain that amendment would be futile or otherwise unwarranted." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015). Hernandez

may file an amended complaint by or before October 14, 2024. The motion is otherwise

denied.

Enter: 23 CV 15375
Date:  September 26, 2024

_____

Lindsay C. Jenkins
United States District Judge

28